*To Be Argued By Michael H. Sussman*

# 14-2020-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

--------------------------------------------------------

FRANCIS HOEFER,

*Plaintiff-Appellant,*

v.

BOARD OF EDUCATION OF THE ENLARGED CITY SCHOOL DISTRICT
OF MIDDLETOWN, KENNETH EASTWOOD, WILLIAM GEIGER, JOHN
DOE 1, JON DOE 2,

*Defendants-Appellees.*

--------------------------------------------------------

**On Appeal from an Order and Judgment of the**
**United States District Court for the Southern District of New York**

---

### APPELLANT'S BRIEF-IN-CHIEF & SPECIAL APPENDIX

---

Michael H. Sussman
SUSSMAN & WATKINS
*Attorneys for Plaintiff-Appellant*
P.O. Box 1005, 1 Railroad Ave, Ste. 3
Goshen, New York 10924
(845) 294-3991 [Tel.]
(845) 294-1623 [Fax]

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………...    iii

PRELIMINARY STATEMENT………………………………………..    1

STATEMENT OF JURISDICTION…………………………….........    2

STATEMENT OF ISSUES PRESENTED……………………………..    3

STATEMENT OF THE CASE……………………………………….....    5

STATEMENT OF FACTS…………………………………………..    8

SUMMARY OF ARGUMENT………………………………………...    18

STANDARD OF REVIEW……………………………………………    21

ARGUMENT………………………………………………………...    23

POINT I

THE DISTRICT COURT ERRED IN DISMISSING THE CASE
BECAUSE IT HAD SUBJECT MATTER JURISDICTION OVER THE
MATTER AND ABUSED ITS DISCRETION IN DECIDING,
NEVERTHELESS, TO DISMISS AND CLOSE THE CASE……………    23

    A. The 60-Day Order did not divest the district court of subject matter
       jurisdiction because the Order itself retained such jurisdiction and
       the law plainly permits the court, in its discretion, to reopen the case.    23

    B. The district abused its discretion in dismissing the case because it
       had already granted Hoefer's request to reopen the matter without
       any objection from Eastwood, permitted the parties to litigate for
       months thereafter before raising the issue sua sponte and, in any
       event, Hoefer requested reinstatement within a reasonable time……    27

i

POINT II

THE DISTRICT COURT ERRED IN GRANTING EASTWOOD
PARTIAL SUMMARY JUDGMENT DISMISSING HOEFER'S FALSE
ARREST CLAIM BECAUSE A REASONABLE JURY COULD FIND
THAT EASTWOOD WAS PERSONALLY INVOLVED IN HOEFER'S
ARREST AND THAT THE SAME LACKED PROBABLE CAUSE...... 36

A.  A reasonable jury could find that Eastwood was personally
    involved in Hoefer's arrest because the record contains sufficient
    evidence demonstrating that Eastwood procured the
    arrest…………………………………………………………. 37

B.  A reasonable jury could find that there was no probable cause for
    Hoefer's arrest because the record contains ample evidence
    demonstrating that the arresting officers lacked sufficient facts
    to reasonably conclude that Hoefer knowingly defied a lawful
    order to leave the premises……………………………………… 43

CONCLUSION………………………………………………………… 51

CERTIFICATE OF COMPLIANCE………………………………... 53

SPECIAL APPENDIX…………………………………………………. SA-1

# TABLE OF AUTHORITIES

## Cases

Anderson v. Chicago Housing Auth.,
    No. 86-C-449, 1987 WL 17160 (N.D.Ill. Sep. 14, 1987)............ 30, 31, 32, 33

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)............................................................. 22

Back v. Hastings on Hudson Union Free Sch. Dist.,
    365 F.3d 107 (2d Cir. 2004)................................................. 36

Blue Ridge Investments, LLC v. Republic of Argentina,
    902 F.Supp.2d 367 (S.D.N.Y. 2012)..................................... 26, 27

Brown v. Ercole,
    563 Fed.Appx. 821 (2d Cir. 2014).......................................... 21

Choice Hotels Int'l., Inc. v. Goodwin & Boone,
    11 F.3d 469 (4th Cir. 1993)................................................. 27

City of New York v. Mickalis Pawn Shop, LLC,
    645 F.3d 114 (2d Cir. 2011)................................................ 21

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995)................................................... 37

Curley v. AMR Corp.,
    153 F.3d 5 (2d Cir. 1998).................................................. 38

Curry v. Syracuse,
    316 F.3d 324 (2d Cir.2003)................................................. 44

Danzer v. Norden Systems, Inc.,
    151 F.3d 50 (2d Cir. 1998)................................................... 22

Farrell v. Burke,
    449 F.3d 470 (2d Cir. 2006)................................................. 37

*Hershey v. Goldstein*,
    938 F.Supp.2d 491 (S.D.N.Y. 2013)……………………………………… 49

*Holcomb v. Iona College*,
    521 F.3d 130 (2d Cir. 2008)……………………………………… 21, 22

*Jaegly v. Couch*,
    439 F.3d 149 (2d Cir. 2006)……………………………………… 36, 37, 43

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010)………………………………………... 21

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 U.S. 375 (1994)……………………………………………… 25

*MLC Fishing, Inc. v. Velez*,
    667 F.3d 140 (2d Cir. 2011)……………………………………… 21

*Muze v. Digital on Demand, Inc.*,
    356 F.3d 492 (2d Cir. 2004)……………………………………… 25, 29, 35

*People v. Leonard*,
    62 N.Y.2d 404 (1984)……………………………………… 43, 44, 45, 46

*PRC Harris, Inc. v. Boeing Co.*,
    700 F.2d 894 (2d Cir. 1983)……………………………………… 29, 34

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)……………………………………… 22, 23, 42

*Savino v. City of New York*,
    331 F.3d 63 (2d Cir. 2003)………………………………………... 37

*Savino v. City of New York*,
    331 F.3d 63 (2d Cir. 2003)………………………………………... 37

*Strategic Research Inst., Inc. v. Fabozzi*,
    187 F.R.D. 507 (S.D.N.Y. 1999)……………………………………… 26, 27

United States v. Da Silva,
    725 F.2d 828 (2d Cir. 1983)……………………………………… 40

Wilder v. Village of Amityville,
    288 F.Supp.2d 341 (E.D.N.Y.2003)……………………………... 43

**Statutes**

28 U.S.C. § 1291……………………………………………………... 2

28 U.S.C. § 1331…………………………………………………. 2, 26

28 U.S.C. § 1343……………………………………………………... 2

42 U.S.C. § 1983……………………………………. 2, 26

42 U.S.C. § 1988…………………………………………………….... 2

N.Y. Penal L. § 140.00(5)………………………………………. 43

N.Y. Penal L. § 140.05………………………………………….. 43

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 41(a)(2)…………………………………….. 3, 26

Fed. R. Civ. P. 56(a)……………………………………………... 22

Fed. R. Civ. P. 60(b)………………………………………….. 26

**Federal Rules of Evidence**

Fed. R. Evid. 801(d)(2)(A)…………………………………… 39

Fed. R. Evid. 801(d)(2)(C)……………………………….... 39, 40

Fed. R. Evid. 801(d)(2)(D)…………………………………… 40

Fed. R. Evid. 803(1)…………………………………….…….. 40

Fed. R. Evid. 803(6)………………………………………………………….. 39

Fed. R. Evid. 805…………………………………………………………... 40

## PRELIMINARY STATEMENT

The final order below brings up for review two erroneous decisions by the district court which caused plaintiff-appellant Hoefer to lose two meritorious claims.

First, after reinstating the case to the calendar pursuant to a "60-day Order" when the parties failed to fully consummate a settlement, and after entertaining the parties' active litigation for seven months thereafter, the district court questioned whether it still had jurisdiction over the matter and erroneously concluded that plaintiff-appellant could not reinstate the case because untimely in doing so. That decision was erroneous because the district court, with jurisdiction to do so and without then-questioning plaintiff-appellant's timeliness, had already reinstated the case months earlier without any objection from the remaining defendant-appellee and, in any event, plaintiff-appellant's request was timely under the applicable reasonableness standard.

Second, at an earlier stage of the litigation, the district court erroneously granted partial summary judgment to the non-settling individual defendant on plaintiff-appellant's false arrest claim on the grounds that he was not personally involved in appellant's arrest and, in any event, there was probable cause. That decision was erroneous because the record contains sufficient evidence from which a reasonable jury could find that the individual defendant was personally involved by procuring plaintiff-appellant's arrest and to demonstrate that the responding

police officers lacked sufficient facts to reasonably conclude that plaintiff-appellant knowingly defied a lawful order to leave the premises, necessary elements of the criminal trespass charge for which he was arrested.

Since the district court erred in the foregoing respects, its Orders granting partial summary judgment and dismissing the matter for failure to timely reinstate should be reversed and vacated and the matter remanded to proceed to trial against the remaining defendant on plaintiff-appellants' two meritorious claims against him.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

As plaintiff-appellant's claims arise under the First, Fourth and Fourteenth Amendments to the United State Constitution, as made actionable by 42 U.S.C. § 1983, and seek to vindicate the deprivation of his civil rights, the district court below had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 1983 and 1988.

After the district court ordered the case closed on May 29, 2014, plaintiff-appellant timely filed his Notice of Appeal on June 12, 2014, bringing up for review all prior non-final orders, including the district court's order granting partial summary judgment to defendant-appellee Eastwood.  Thus, this Court has appellate jurisdiction over all issues raised herein under 28 U.S.C. § 1291.

# STATEMENT OF ISSUES PRESENTED

(1) Whether, after entering a "60-day Order" of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2) to permit the parties time to consummate a settlement, the district court retained jurisdiction to reopen the case, and subsequently adjudicate its merits, where the express terms of the Order permitted the district court to reopen the case at the request of either party and set no date certain for doing so.

Answer: Yes.

(2) Whether the district court abused its discretion by concluding that plaintiff-appellant failed to timely request reinstatement of the case after entry of the "60-Day Order," where the court, in fact, had already reinstated the case to the calendar eight months earlier without then questioning plaintiff-appellant's timeliness, defendant-appellee never objected to such reinstatement and the parties actively litigated during that interval.

Answer: Yes.

(3) Whether plaintiff-appellant's request to reopen the case after entry of the "60-Day Order" was timely, where the Order did not provide a date certain for making such request, defendant-appellees unnecessarily delayed consummation of the settlement, one defendant reneged on the settlement during negotiations, that party never objected to reinstating the case and plaintiff appellant requested reinstatement

as to the non-settling party about two-and-a-half months after expiration of the 60-day period to consummate settlement.

Answer: Yes.

(4) Whether there is sufficient evidence in the record from which a reasonable jury could find that defendant-appellee Eastwood procured plaintiff-appellant's arrest and, thus, was sufficiently personally involved therein to be held liable for unconstitutional false arrest under § 1983 and, thus, the district court erred in concluding otherwise and granting Eastwood partial summary judgment dismissing that claim against him.

Answer: Yes.

(5) Whether there is sufficient evidence in the record from which a reasonable jury could find that the responding police officers lacked sufficient facts to reasonably conclude that plaintiff-appellant knowingly defied a lawful order to leave the school premises and, thus, lacked probable cause to arrest him for criminal trespass upon public property such that the district court erred in concluding otherwise and granting Eastwood partial summary judgment dismissing the false arrest claim against him.

Answer: Yes.

## STATEMENT OF THE CASE

Plaintiff-Appellant FRANCIS E. HOEFER commenced this action on April 16, 2010.  His complaint alleges that the BOARD OF EDUCATION OF THE ENLARGED CITY SCHOOL DISTRICT OF MIDDLETOWN ("Board"), DR. KENNETH EASTWOOD, in his role as Superintendent of Schools of the Middletown School District, and WILLIAM GEIGER, in his role as President of the Board (collectively the "School District Defendants"), violated his First Amendment free speech and assembly rights when they acted in concert to deny him the opportunity to speak during the public participation session of a public meeting of the Board and then excluded him from the meeting.  Hoefer's complaint also alleges that Eastwood initiated his false arrest and that Defendants JOHN DOE 1 and JOHN DOE 2, two unidentified police officers, unlawfully arrested him in violation of his Fourth Amendment rights.

On March 23, 2012, the School District Defendants moved for partial summary judgment seeking dismissal only of Hoefer's false arrest claim against Eastwood.  By Opinion and Order dated January 9, 2013, the district court (Hon. Edgardo Ramos, U.S.D.J.) granted partial summary judgment and dismissed Hoefer's false arrest claim against Eastwood, holding that there was insufficient evidence demonstrating Eastwood's personal involvement in Hoefer's arrest and that there was no genuine dispute that there was probable cause for the arrest.  The

district court also dismissed Hoefer's claims against the two John Doe defendants. Hoefer's First Amendment claims against the School District Defendants proceeded.

Trial on Hoefer's First Amendment claims was scheduled for May 6, 2013. On or about April 22, 2013, the parties notified the district court of a settlement and, on April 23, 2013, pursuant to the parties' request, the district court issued a "60-Day Order" discontinuing the matter subject to reopening if the parties failed to consummate the contemplated settlement. The Order did not state whether discontinuance was with or without prejudice and did not limit the time to request reopening to a date certain or specific timeframe.

On September 18, 2013, Hoefer's counsel notified the district court that settlement with defendants Board and Geiger had been consummated but not with Eastwood. Accordingly, counsel requested that a conference be scheduled to set the matter down for trial on Hoefer's First Amendment claim against Eastwood.

On September 19, 2013, the district court granted counsel's request and scheduled a conference for October 24, 2013 (this Order was not docketed until September 20, 2013). At the October 24, 2013 conference, Eastwood did not object to the court's reinstatement of the matter or otherwise argue that Hoefer's request for reinstatement was untimely. Instead, he requested leave to file a second motion for summary judgment, this time seeking to dismiss Hoefer's First Amendment Claim against him. Since Eastwood explicitly failed to seek dismissal of this claim

in his first motion for partial summary judgment a year and a half earlier, the district court ordered the parties to brief the issue of whether or not it should exercise its discretion to permit and consider a successive summary judgment motion.

By Opinion and Order dated April 7, 2014, the district court denied Eastwood's request to file a successive summary judgment motion. In addition, for the first time since the case was reinstated in October 2013, and without Eastwood raising the issue, the district court questioned, in a footnote, whether it "even has the ability to reopen this matter" since Hoefer's counsel did not contact it to request a conference until more than four months after entry of the 60-Day Order. The district court also scheduled a pre-trial conference for April 22, 2014.

At the April 22, 2014 pre-trial conference, addressing the issue it raised in the footnote of its April 7, 2014 Opinion and Order, the district court ordered the parties to submit letter briefs on the issue of whether or not it had "jurisdiction" to reopen the case.

By Opinion and Order dated May 29, 2014, the district court belatedly denied Hoefer's request to reinstate the case, holding that, even though the 60 Day Order did not provide a date or timeframe by which a request to reinstate must be made, Hoefer's delay of about four and half months after entry of the order was unreasonable and, thus, the court was within its discretion not to reopen the case.

On June 12, 2014, Hoefer timely filed his notice of appeal from the court's final order.  By this appeal, Hoefer seeks an order reversing and vacating (1) the district court's May 29, 2014 Opinion and Order denying Hoefer's application to reinstate and dismissing the case, and (2) the district court's January 9, 2013 Opinion and Order granting Eastwood summary judgment on, and dismissing, Hoefer's false arrest claim.

## STATEMENT OF FACTS

Plaintiff-Appellant Francis E. Hoefer is a resident of Oswego, New York and, at all times relevant to his complaint, was a member of the Board of Education of the Oswego City School District (JA-42, 46, 50-51).  He was initially elected to that Board in 2000, removed therefrom in 2004 and reelected in 2008 (JA-50-51).  Between 2001 and 2004, Defendant-Appellee Dr. Kenneth Eastwood was superintendent of the Oswego City School District; he resigned to take over as Superintendent of the Enlarged City School District of Middletown (JA-96-97; JA-366 at ¶¶ 1, 4).  Hoefer was extremely critical of Eastwood when the latter was in Oswego and attributes his removal from the Board to Eastwood (JA-74).

In 2010, Hoefer was contacted by Nicholas Mauro, a member of Middletown's Board of Education (JA-90-92).  Mauro advised Hoefer that Eastwood was seeking to have the Board remove another member, Roy Paul, in a manner similar to that he had used to instigate Hoefer's removal from the Oswego

Board years earlier (Id.).  On behalf of himself and several other members of the Board, Mauro invited Hoefer to attend and speak at a public Board meeting for the purpose of enlightening the Board about Eastwood's time in Oswego and better place in context his effort to remove Paul (Id.).  Hoefer agreed (JA-105).

On March 4, 2010, Hoefer attended a regular public meeting of the Board with the intent to speak at the public comment session (JA-30 at ¶¶ 6-7).  He expected to recount his own removal from the Oswego School Board, as instigated by Eastwood and his followers and to discuss Eastwood's conduct as superintendent in Oswego (JA-112; JA-118-22).  His planned speech was directly relevant to matters of concern to the Board and the Middletown School District's community.

Eastwood was not aware of Mauro's invitation to Hoefer or the latter's planned attendance prior the meeting; however, before Hoefer had a chance to speak, Eastwood spotted him in the audience and notified members of the Board, including the Board President, and School District security officer Ken Haverlan, that he believed Hoefer was there to speak negatively about him (JA-147-48; JA-361).

At about 8:00 p.m., Board president Geiger commenced the public comment period scheduled and invited speakers to the microphone to address the Board (JA-130-31; JA-438; Exhibit F).[1]  Geiger stated that this portion of the meeting is for

---

[1] Citations to Exhibit F refer to the video footage of the March 4, 2010 Board meeting, which may be found on the CD containing the two multimedia exhibits of the Joint Appendix and filed in hard copy with the Court.

local residents and members of the local community to address the Board (Exhibit F). But neither the district's written policy nor the approved agenda for the meeting so limited the public comment section to only local community members and residents (JA-432; JA-445-46). Rather, both expressly permitted comment by the general public at large (Id.).

Upon Geiger's announcement, Hoefer approached the microphone (Exhibit F). As he was doing so, Eastwood passed Geiger a note and the two had a noticeable non-verbal exchange, which can be seen on the video tape of this event in the record (JA-136; Exhibit F). As Hoefer was about to speak, Geiger directed him to sign his name in the sign-in sheet before doing so, and Hoefer complied (JA-139; JA-435 Exhibit F).

Hoefer began to read from a prepared statement (Exhibit F). As he clearly stated his name and announced that he was a member of the Oswego City School District Board of Education, Geiger interrupted and asked Hoefer to repeat himself (Id.). Hoefer complied (Id.). Geiger then asked Hoefer if he was a resident or member of the local community (Id.). Hoefer responded that he was a resident of New York State (Id.). Geiger again asked Hoefer if he lived locally (Id.). Hoefer responded he did not and, as he replied, Mauro chimed in from the dais in defense of Hoefer, rebuking Geiger's attempt to cut appellant off and insisting that the Board is not legally permitted to discriminate between residents and non-residents (Id.).

Geiger declared Mauro out of order and otherwise rebuffed his attempts to
have the Board address the issue of whether or not it may properly preclude a non-
resident from speaking publically at the meeting (Id.).  While Geiger and Mauro
were debating the issue, Hoefer began reading his introduction again (Id.).  Geiger
immediately cut him off and asked Haverlan to "remove him from the microphone
area" (Id.).  For the next minute and half, Mauro continued to criticize Geiger and
demand that the Board recognize Hoefer (Id.).  Instead of addressing the issue
directly, Geiger moved for the Board to adjourn and this motion carried (Id.).  The
Board was out of session for approximately twenty-six minutes, from about 8:02
p.m. to about 8:28 p.m. (JA-149; JA-438; Exhibit F).

The entire incident, from the point at which Geiger announced the public
comment to the point at which the Board went out of session, lasted only about three
minutes and thirty-three seconds (Exhibit F).  Hoefer spoke for only about forty-two
seconds of that time (Id.).  He was not disruptive, did not raise his voice to the Board
and did not harass, intimidate or in any way provoke the Board or the audience (Id.).
In fact, all he was really able to say was his name and where he was from before
Geiger interrupted and cut him off (Id.).

While the Board was out of session and the public meeting temporarily
suspended, Haverlan asked Hoefer to leave the auditorium (JA-152).  Hoefer asked
why and Haverlan did not provide a clear answer (JA-153-55).  Instead, Haverlan

retreated behind the curtains of the stage where Eastwood and his cronies on the Board had gathered (Id.). When, he emerged, Haverlan again asked Hoefer to leave (Id.). When Hoefer asked why, Haverlan merely told him that he would be arrested for trespassing if he did not leave (Id.).

During this time, Haverlan had asked another district office, Henry Zelmer to call the police (Exhibit H).[2] A few minutes later, Middletown police officers Mercado and Festa arrived on the scene and began to interview Hoefer (JA-354-55; JA-358-60; JA-363-64. Soon thereafter, officers Weymer and Gass arrived (JA-356-57; JA-361-62; JA-365). According to their official reports of the incident, these officers advised Hoefer that the school no longer wanted him on the premises and that he was required to leave (JA-354-65). Hoefer advised the officers that he had a right to be there and was simply exercising his First Amendment rights (see JA-359; JA-363).

Officer Festa advised Hoefer that he was being disruptive, but that officer admitted that had not spoken with any member of the Board or district security. He had not been present when Hoefer attempted to address the Board and lacked personal knowledge upon which to base this assertion (see JA-359). Otherwise, except for indicating that appellant was refusing to leave a public meeting, no police

---

[2] Citations to Exhibit H refer to the audio recording of Zelmer's phone call to the police of March 4, 2010, which may be found on the CD containing the two multimedia exhibits of the Joint Appendix and filed in hard copy with the Court.

officer provided any facts to suggest that Hoefer had been disruptive to the meeting (see JA-354-64 *passim*).

Ultimately, after a few minutes of speaking with the officers, Hoefer agreed to leave and followed the officers out of the building (see Id.). Officer Festa reported that he "did not have to place hands on Hoefer while escorting him out of the auditorium" (JA-359), and Mercado reported that Hoefer had "been acting like a gentleman" with the police (JA-363). Both of these reports undermine any suggestion that Hoefer was being disruptive.

Once outside, Officer Mercado told Hoefer to speak with another officer because he [Mercado] had "to find out what Dr. Eastwood wants to do" (Id.). Mercado went back inside the school "and told Ken Haverlan to ask Dr. Eastwood what he wants done" (Id.). Haverlan then re-entered the auditorium. When he emerged, Haverlan advised Mercado that "Eastwood wants him arrested" (Id.). Mercado then exited the building and placed Hoefer under arrest (Id.).

Hoefer was handcuffed and transported to the police station, where he was interviewed (JA-363). Ultimately, the district attorney's office advised the police that the case was not strong enough to prosecute and Hoefer was released without charges being filed but on the condition that he not to return to the Board meeting (JA-357; JA-363). Hoefer agreed, was driven to back to the school parking lot by police to collect his car and then drove away (JA-363).

Hoefer commenced the instant action against the Board, Geiger and Eastwood, alleging violations of his First Amendment speech and assembly rights and his Fourth Amendment right to be free from unreasonable seizures (*i.e.*, false arrest) (JA-12-18). Defendants-Appellees moved for partial summary judgment seeking to dismiss only Hoefer's false arrest claim against Eastwood (JA-27-28). The district court granted that motion (SA-6-21) and set the matter down for trial on May 6, 2013 with respect to Hoefer's remaining claims against all defendants (JA-6 [Min. Entry, Jan.29, 2013]).

On April 22, 2013, just two weeks before trial was to commence, the parties notified the court that they had reached a settlement in principle and requested that the court adjourn the trial date and discontinue the matter to reopening if settlement failed (SA-1). The parties requested that the dismissal order provide a sixty day window to consummate settlement instead of the typical thirty day order in light of the fact that the Board needed to present the settlement for approval at a duly convened meeting (JA-506).

The next day, April 23, 2013, the district court issued the 60-Day Order, which provided, in full:

> The Court having been advised that all claims asserted herein have been settled, it is
>
> ORDERED, that the above-entitled action be and hereby is discontinued, without costs to either party, subject to

14

reopening should the settlement not be consummated within sixty (60) days of the date hereof.

The parties are advised that if they wish the Court to retain jurisdiction in this matter for purposes of enforcing any settlement agreement, they must submit the settlement agreement to the Court with 60 days with a request that the agreement be "so ordered" by the Court.

SO ORDERED

(JA-452). On its face, the Order did not state whether it is with or without prejudice and, although it set a timeframe for finalizing the settlement (sixty days) and for the parties to request the court retain jurisdiction for purposes of enforcing the settlement, it did not set a deadline for requesting reinstatement of matter if not settled within sixty days (Id.).

On August 30, 2013, Hoefer's counsel advised the court that defendants-appellees had stymied the settlement as the Board had yet to approve the settlement and he had been advised that Eastwood had reneged and hired new counsel (JA-506-07). Appellant's counsel requested that the court set a date certain for the Board to approve the settlement and pay the proceeds or, absent compliance, reinstate the matter to the trial calendar. (JA-507). The district court did not act on counsel's request.

About 19 days later, on September 18, 2013, 87 days after the 60-day window to consummate settlement had expired, Hoefer's counsel advised the district court

that the settlement with the Board and Geiger had been fully consummated and that Hoefer wished to pursue his remaining claim against Eastwood (JA-453-54). Appellant's counsel asked the court to schedule a conference to set the matter down for trial (JA-454).

The next day, September 19, 2013, the district court granted Hoefer's request and scheduled a status conference for October 24, 2013; this Order was not docketed until September 20, 2013 (JA-455).  In doing so, the court did not raise any issues regarding the timeliness of Hoefer's request to reinstate.  Moreover, Eastwood did not object to reinstatement or raise timeliness.  Rather, his counsel wrote the court requesting leave to file a second summary judgment (JA-457-59).

At the October 24, 2013 conference the district court did not suggest it lacked jurisdiction to continue to hear the matter, but rather focused on the propriety of Eastwood's request to file a second dispositive motion.  After extensive discussion, the district court permitted appellee Eastwood to brief the issue of whether or not he should be permitted to so file (JA-8 [Min. Entry, Oct. 24, 2013]).

On November 27, 2013, Eastwood filed his motion seeking permission to file another dispositive motion (JA-459-61).  The motion was fully submitted on December 16, 2013 (JA-9 [Docket No. 43]).  Eastwood's memorandum of law in support of his motion and reply memorandum of law addressed only the issue of whether or not he should be permitted to file another dispositive motion and focused

primarily on the substance of Hoefer's First Amendment claim and the failures of Eastwood's prior counsel to include this argument in its prior motion for summary judgment (JA-462-89). Nowhere in either memorandum of law did Eastwood object to the court's reinstatement of the case pursuant to the 60-Day Order upon the parties' failure to fully consummate settlement (Id.).

By Opinion and Order dated April 7, 2014, the district court denied Eastwood's request to file another dispositive motion (JA-490-96). In a footnote in that decision, for the first time, the district court questioned whether it still had "the ability to reopen" the matter in light of the fact that Hoefer did not request reinstatement until after the sixty day window for consummating settlement had expired (JA-492 n.3). It also set a pretrial conference for April 22, 2014 (JA-496).

At the April 22, 2014 pretrial conference, the district court again raised the issue of its jurisdiction in light of the 60-Day Order (JA-9-10 [Min. Entry, Apr. 22, 2014] and directed the parties to brief the issue of jurisdiction (Id.). It also set a trial date and schedule for pre-trial motions and filings, "[s]ubject ot the Court's determination that it has jurisdiction to hear the case . . . ." (Id.).

After briefing by the parties, by Opinion and Order dated May 29, 2014, the court held that Hoefer failed to request reinstatement within a reasonable time and thus, denied his request to reinstate, dismissed the case and ordered it closed (SA-1-5).

# SUMMARY OF ARGUMENT

The district court erred in dismissing the case because it had subject matter jurisdiction over the matter and abused its discretion in concluding that Hoefer could not reinstate the matter.

The 60-Day Order did not affect the district court's subject matter jurisdiction because, by the express terms of the Order, it retained such jurisdiction and, in any event, the law plainly permits the court, in its discretion, to reopen the case. Moreover, the district court abused its discretion in dismissing the case because it had already granted Hoefer's request to reopen the matter, without any objection from Eastwood, and permitted the parties to litigate for months before raising the issue *sua sponte*.

Indeed, in response to Hoefer's request to schedule a status conference to set a trial date with respect to his remaining claim against Eastwood, the Court granted the request and set a conference. Eastwood responded, not by objecting to reinstatement in light of the 60-Day Order, but by requesting leave to file a second summary judgment motion addressing the merits of Hoefer's First Amendment Claim. The district court convened the conference and, instead of raising the issue of its jurisdiction or discretion to reopen the case under the 60-Day Order, it instead focused on the issue of whether or not Eastwood should be permitted to file another dispositive motion, having done so about a year and half earlier.

The parties continued to litigate, briefing the issue of the district court's discretion to permit Eastwood to move for summary judgment again. In its briefing, Eastwood did not raise any issues as to the district court's re-opening of the case pursuant to the 60-Day Order and, thus, waived any such argument. It was not until about seven months after Hoefer requested reopening and the court set a conference, and about six months after that conference, that the district court first raised the issue of the reopening under the 60-day Order.

Under these circumstances, where the district court's own conduct demonstrates it had already effectively re-opened the case, Eastwood raised absolutely no objections to such reopening, thus waiving any such arguments, and the parties continued to expend time and resources litigating in good faith under the assumption that the case, in fact, had been reinstated, the district court abused its discretion in holding that Hoefer's request to reopen was untimely and dismissing the matter.

And, in any event, under the circumstances, Hoefer sought reopening within a reasonable time. Since Eastwood was not prejudiced by reopening and Hoefer faced substantial prejudice if the case was not reopened, and since the interests in finality here were weak in light of the fact the merits of the remaining claims had never been adjudicated and the parties were well aware that reinstatement was

permitted, and would be sought, if settlement failed, Hoefer's 87 day "delay" in officially requesting reinstatement was not unreasonable.

The district court also erred earlier when it granted Eastwood partial summary judgment on Hoefer's false arrest claim because a reasonable jury could find that Eastwood was personally involved in Hoefer's arrest and that the same lacked probable cause.

A reasonable jury could find that Eastwood was personally involved in Hoefer's arrest because the record contains sufficient evidence demonstrating that Eastwood procured the arrest.  Indeed, one of the responding/arresting officers indicated in his report that Hoefer was arrested because Eastwood wanted this to happen, and the other police reports are not inconsistent therewith.  These reports corroborate Hoefer's deposition testimony that the officers advised him they were arresting him at Eastwood's request.  Thus, the district court erred in holding that no reasonable jury could find that Eastwood was personally involved in Hoefer's arrest.

A reasonable jury could also find that there was no probable cause for Hoefer's arrest because the record contains ample evidence demonstrating that the arresting officers lacked sufficient facts to reasonably conclude that Hoefer knowingly defied a lawful order to leave the premises.

## STANDARD OF REVIEW

### A. <u>Dismissal of the Action</u>

To the extent the court based its decision to dismiss the action on a finding

that it lacked subject matter jurisdiction to keep the case open, this Court reviews

the district court's decision *de novo*. <u>See</u> <u>City of New York v. Mickalis Pawn Shop,</u>

<u>LLC</u>, 645 F.3d 114, 126 (2d Cir. 2011). The proponent of subject matter jurisdiction

bears the burden of affirmatively establishing the same. <u>See</u> <u>MLC Fishing, Inc. v.</u>

<u>Velez</u>, 667 F.3d 140, 141 (2d Cir. 2011).

To the extent the district court justified its dismissal of the action on

discretionary grounds – *i.e.*, the reasonableness of Hoefer's request to reinstate – this

Court reviews the district court's decision for abuse of discretion. <u>Cf.</u> <u>Brown v.</u>

<u>Ercole</u>, 563 Fed.Appx. 821, 822 (2d Cir. 2014) (summary order) (stating standard of

review for denial of a Rule 60(b) motion). The district court abuses its discretion

when it "bases its ruling on an erroneous view of the law or a clearly erroneous

assessment of the evidence, or renders a decision that cannot be located within the

range of permissible decisions." <u>Kiobel v. Millson</u>, 592 F.3d 78, 81 (2d Cir. 2010)

(citations and quotation marks omitted) (alterations accepted).

### B. <u>Summary Judgment</u>

This court reviews the district court's grant of summary judgment *de novo*.

<u>See</u> <u>Holcomb v. Iona College</u>, 521 F.3d 130, 137 (2d Cir. 2008). Summary judgment

is appropriate only where the moving party establishes that there is no genuine dispute as to any material fact, entitling to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if its resolution could affect the outcome of the suit and a dispute is genuine if reasonable minds may differ as to its resolution. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a reasonable jury could return a verdict for the non-moving party, then summary judgment is inappropriate and the court must deny the motion. See Id. at 250.

The court must view the record in the light most favorable to the non-moving party, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in [its] favor." See Holcomb, 521 F.3d at 137. The court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." See Anderson, 477 U.S. at 249. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." Id. at 255. And "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." See Danzer v. Norden Systems, Inc., 151 F.3d 50, 54 (2d Cir. 1998).

Finally, the Court should review the record as a whole and, in doing so, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000).

As such, "the court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id.  If, when the record is viewed in this light, a reasonable jury could find for the non-moving party, the motion must be denied.

## ARGUMENT

This appeal challenges two separate rulings of the district court below – its final order dismissing and closing the case and its earlier then-non-final order granting Eastwood partial summary judgment on Hoefer's false arrest claim, which became final and appealable upon the district court's dismissal of the case in its entirety.  Both orders are erroneous and must be reversed.

## POINT I

**THE DISTRICT COURT ERRED IN DISMISSING THE CASE BECAUSE IT HAD SUBJECT MATTER JURISDICTION OVER THE MATTER AND ABUSED ITS DISCRETION IN DECIDING, NEVERTHELESS, TO DISMISS AND CLOSE THE CASE.**

**A. The 60-Day Order did not divest the district court of subject matter jurisdiction because the Order itself retained such jurisdiction and the law plainly permits the court, in its discretion, to reopen the case.**

Though the district court's May 29, 2014 Order dismissing the case did not expressly state that the court lacked jurisdiction, it appears that the district court rested its decision on jurisdictional grounds.  Specifically, when the district court

first raised the issue in a footnote to its April 7, 2014 Opinion and Order denying Eastwood leave to file a second dispositive motion, it framed the issue as whether or not it "has the ability to reopen this matter" (JA-492, n.3). Of course, reference to the court's "ability" to hear a matter invokes the issue of subject matter jurisdiction. Moreover, courts generally do not raise non-jurisdictional issues *sua sponte*, and here Eastwood had never before objected to reinstatement.

Furthermore, the district court docket's Minute Entry summarizing the subsequent April 22, 2014 pretrial conference indicates that the parties were directed to brief the Court "on the issue of jurisdiction" and "[s]ubject to the Court's determination that it has jurisdiction to hear this case" a trial date was set (JA-9-10 [Min. Entry, Apr. 22, 2014]). And, the court's May 29, 2014 Opinion and Order dismissing the case states: "Before the court are letters from [the parties] addressing the issue of whether the Court has jurisdiction" (SA-1).

Since the district court initially broached, and ultimately framed, the issue as one of jurisdiction, it appears its refusal to reinstate the case was based on a finding that it lacked jurisdiction to do so. But, such a finding is in error because the district court had jurisdiction to reopen the matter and proceed to trial.

First and foremost, the 60-Day Order expressly retained such jurisdiction by discontinuing the case "subject to reopening should the parties fail to consummate settlement within 60 days" (JA-452). Of course a federal court may properly retain

and exercise jurisdiction in such a manner. Cf. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380-81 (1994) (recognizing that parties desiring court to retain jurisdiction to enforce settlement agreement may achieve this end if dismissal order expressly retains jurisdiction for that purpose).

Moreover, this Court's precedent demonstrates that a district court has jurisdiction to reopen and reinstate a voluntarily dismissed case. Indeed, in Muze v. Digital on Demand, Inc., 356 F.3d 492 (2d Cir. 2004), cited by the district court below in its May 29, 2014 Opinion and Order, this Court held that the district court erred in failing to reopen a case it had dismissed with prejudice pursuant to a 30-day Order of dismissal subject to reopening where the plaintiff requested reopening six days after the thirty-day period expired. See Muze, 356 F.3d 493-95. Like the dismissal order in this case, the order in Muze provided a time period to consummate settlement [thirty days], but did not limit the time to request re-opening to that, or any other, timeframe. See Id. at 493-94.

This Court held that, when a dismissal order like this does not provide a time limit for requesting reinstatement, such a request must be made within a reasonable time. See Id. at 495. It ultimately held that plaintiff's six day delay was reasonable and directed the district court to reopen the matter. See Id. at 495.

Nowhere in its Muze decision did this Court raise the question of jurisdiction or frame the issue in these terms. See Id. passim. Rather, the court's reference to

reasonableness intimates that a district court's decision to reopen a matter in such circumstances is discretionary. If the court had lost jurisdiction to reopen the matter, no amount of reasonableness would have been able to bring it back – jurisdiction either exists or it does not, it is not a variable concept.

Here, there is no dispute that the district court had subject matter jurisdiction over Hoefer's federal constitutional claims brought under 42 U.S.C. § 1983, which quintessentially invoke the court's federal question jurisdiction under 28 U.S.C. § 1331. Hoefer's remaining claim against Eastwood continued to provide federal question jurisdiction. Accord Kokkonen 511 U.S. at 380 ("Enforcement of a settlement agreement, however . . . , *is more than just a continuation or renewal of the dismissed suit*, and hence requires its own basis for jurisdiction.") (emphasis added). Moreover, the case had not yet been dismissed with prejudice, see Fed. R. Civ. P. 41(a)(2) ("Unless the order specifies otherwise, a dismissal . . . is without prejudice); JA-452, and, even if it had been, the court would nevertheless have jurisdiction to entertain, and grant, a motion to reopen and continue the case, see Fed. R. Civ. P. 60(b) (permitting the district court, in its discretion, to relieve a party from a final judgment).[3]

---

[3] The district court below, citing Blue Ridge Investments, LLC v. Republic of Argentina, 902 F.Supp.2d 367, 384 (S.D.N.Y. 2012) and Strategic Research Inst., Inc. v. Fabozzi, 187 F.R.D. 507, 509 (S.D.N.Y. 1999), suggested that the 60-Day Order here was a dismissal with prejudice, although it never explicitly stated this conclusion in so many words (SA-4-5). It noted only that the Second Circuit had not yet addressed the issue and, citing Blue Ridge Investments that it found "persuasive the reasoning that the 'common understanding' of sixty-day orders is that they result

Under these circumstances, the district court had jurisdiction ("the ability," as the district court had put it) to reopen the matter. Thus, to the extent the district court dismissed the case because it found it lacked jurisdiction to reopen it, its holding was erroneous and must be reversed.

**B. The district abused its discretion in dismissing the case because it had already granted Hoefer's request to reopen the matter without any objection from Eastwood, permitted the parties to litigate for months thereafter before raising the issue *sua sponte* and, in any event, Hoefer requested reinstatement within a reasonable time.**

To the extent it could be argued that the district court did not base its decision to dismiss the case on jurisdictional grounds, but rather, that it presumed it had jurisdiction and, nevertheless, exercised its discretion to dismiss the case, the court abused its discretion and its Order should be reversed.

First, to the extent the district court implicitly found it had jurisdiction, it should have ended its inquiry there because it had limited itself to that single

---

in 'dissmiss[al] with prejudice regardless of whether the words "with prejudice" appear in the order,' because 'treatment of such of dismissal as being without prejudice would produce the unacceptable and doubtless unintended result that the dismissal would remain without prejudice even if the parties proceeded to consummate the settlement as expected'" (SA-4-5 [quoting Strategic Research, 187 F.R.D. at 509). But in doing so, the district court failed to recognize that after the Strategic Research court stated the language it quoted regarding "common understanding" of such orders, that court clarified: "Nevertheless, this matter is governed by the Federal Rules of Civil Procedure and the principles of former adjudication irrespective of plaintiff's subjective understanding and it is to those that the Court now turns." Strategic Research, 187 F.R.D. at 509. Indeed, the Blue Ridge Investment court picked up on this qualification and, following the Fourth Circuit's holding in Choice Hotels Int'l., Inc. v. Goodwin & Boone, 11 F.3d 469 (4th Cir. 1993), correctly held that Rule 41(a)(2) dismissals are without prejudice unless stated otherwise. See Blue Ridge Investments, 902 F.Supp.2d at 383-85. Choice Hotel's reasoning is sound and should be applied here over the district court's suggestion that the 60-Day Order in this case was with prejudice.

question.  Indeed, the court set a trial date pending only resolution of the question of whether it "has jurisdiction to hear this case" (JA-9-10 [Min. Entry, Apr. 22, 2014]). Thus, if it found it had jurisdiction, it should have proceeded to trial and not to consider the timeliness of Hoefer's request to reinstate.

Second, and more critically, the district court abused its discretion to the extent it treated the issue of reinstatement as an open question.  In fact, the court had already reinstated the case by granting Hoefer's September 18, 2013 request for a status conference and holding the status conference on October 24, 2013.  And, if that were not enough, the district court thereafter permitted Eastwood to litigate the issue of whether or not he could file another dispositive motion and, over the next seven months, adjudicated Eastwood's motion, held a pre-trial conference and set the matter down for trial, pending only resolution of the question of whether or not it still had jurisdiction over the matter.  And, all the while, Eastwood never objected to Hoefer's reinstatement of the case or otherwise argued that his request was untimely.

In sum, any inquiry by the court into the reasonableness of the timeframe in which Hoefer sought reinstatement was misplaced because the court had already, at least implicitly, found Hoefer's request to be timely by reopening the case, actively entertaining litigation and setting a trial date.  In other words, it was error for the

district court to "deny" Hoefer's request to reinstate more than eight months after it had already granted that request without any objection by Eastwood.

Finally, even if this Court were to find it was proper for the district court to evaluate the timeliness of Hoefer's request, the district court's assessment failed to properly consider the circumstances of the case or balance the relevant interests and, thus, its determination was an abuse of discretion. Indeed, under the circumstances, Hoefer requested reinstatement within a reasonable time after expiration of the sixty day timeframe to consummate settlement expired. See Muze, 356 F.3d at 495.

Though there is a paucity of cases discussing what constitutes "reasonableness" for purposes of requesting reopening of a case pursuant to voluntary dismissal order where no deadline for such request had been set, this Court has discussed reasonableness in the context of assessing the timeliness of a Fed. R. Civ. P. 60(b)(6) motion, stating that, to determine timeliness under a reasonableness standard, "we must scrutinize the particular circumstances of the case and balance the interest in finality with the reasons for delay." See PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983).

In this case, Hoefer officially requested that the court reinstate the case on September 18, 2013 (JA-453-54), which was 87 days after expiration of the sixty

day period to consummate settlement.  Under the circumstances of this case, and balancing the relevant competing interests, 87 days was a reasonable time. [4]

In assessing the timeliness of Hoefer's request under a reasonableness standard, the decision of the District Court for the Northern District of Illinois in Anderson v. Chicago Housing Auth., No. 86-C-449, 1987 WL 17160 (N.D.Ill. Sep. 14, 1987), though not controlling, is quite instructive.  There, pursuant to the parties' notification that they had settled the case, the district court dismissed the matter, granting plaintiff leave to reinstate within thirty days. See Anderson, 1987 WL at *1.  The dismissal order entered on June 3, 1986.

Over the next month, the parties negotiated over the final terms of the settlement, but could not agree. See Id.  On July 3, 1986 (exactly thirty days after dismissal), the plaintiff proposed to the defendant a modification to the settlement agreement and indicated that "if this modification [is] not satisfactory, we will reinstate the complaint and proceed." Id.  But plaintiff did not seek to reinstate the complaint until some nine months later when she moved under Rule 60(b) to vacate the June 3, 1986 dismissal order. Id.

---

[4] Hoefer also notified the court of issues with the settlement process some 19 days earlier on August 30, 2013 and, at that time, indicated his desire to reinstate the matter to the calendar if settlement failed (JA-506-07).  Thus, his request arguably came just 68 days after expiration of the 60-day time frame.  Since we believe 87 days was reasonable, as explained herein, 68 days would be even more reasonable.

30

Applying a reasonableness standard akin to that announced by this Court in

PRC Harris, 700 F.2d at 897, the Anderson court found plaintiff's request to be

timely, granted her motion and reinstated the case. See Id. at *2. In doing so, the

court first emphasized:

> [T]his is not a case which has been adjudicated on its
> merits, where one of the parties wishes to reopen the
> judgment and disturb what the other party has already
> considered to be a final result. The parties to this case
> never reached a final accord. Anderson rejected [the
> defendant's] settlement proposal and [the defendant] was
> aware of Anderson's desire and intention to reinstate her
> case.

Id. at *2. The court next explained:

> [T]he notion of prejudice to the parties is important in
> determining a 'reasonable time' under Rule 60(b)(6).
> Here, [the defendant] will suffer no prejudice should the
> complaint be reinstated. It has not been lulled into
> believing the case was resolved and has not changed its
> position in any way. Anderson, on the other hand, would
> be greatly prejudiced if we did not reinstate her complaint.
> She would lose her only means of redressing alleged
> violations of her civil rights.

Id. Finally, addressing the defendant's contention that the plaintiff had not provided

a good reason for her delay, the district court retorted:

> Our purpose in dismissing Anderson's complaint and
> providing a 30-day period for reinstatement was to
> facilitate the settlement. At the time of the dismissal, the
> parties knew the case had not yet been settled and that if it
> was not settled it would be reinstated. The 30-day period
> for reinstatement was to allow for the obvious possibility
> that the settlement would not go through. There was

31

> nothing critical about 30 days; it is simply the period this
> court customarily assumes will be sufficient to conclude a
> settlement. Had either side asked for a longer period, it
> would have been granted.

Id.

Anderson's reasoning is sound and should be applied in this case. And its application supports re-opening here even more than it did on its own facts because, unlike in Anderson, the dismissal order here did not set a deadline for requesting reinstatement and thus was not a final order unless and until the district court determined that a reasonable time for reinstatement had passed and entered a final order. Moreover, the 87 day delay in this case is remarkably shorter (about a third the time) than the more than nine month delay in Anderson.

First, like in Anderson, this case had not been adjudicated on the merits and Hoefer's request to re-instate was not an attempt to undo a final result. Moreover, Eastwood was not lulled into believing the case had been revolved. In fact, he had an opportunity to finally resolve the case but, instead, reneged on the settlement. And when his new counsel demanded that Hoefer dismiss his remaining claim, Hoefer refused and notified the district court of these happenings within weeks after they occurred and only nineteen days before officially requesting reinstatement (see JA-506-07). Thus, like the defendant in Anderson, Eastwood was aware of Hoefer's desire to reinstate the case and pursue his last claim. In light of these facts, and the

32

fact that the 60-Day Order expressly contemplated reopening, Eastwood faced no prejudice by the reopening of the case.

Also, like the plaintiff in Anderson, Hoefer faced substantial prejudice if the case were not reopened – namely the loss of his meritorious civil rights claim against Eastwood.  Indeed, as the statute of limitations had run on his claim, the court's ultimate denial of his request to reinstate terminated that claim forever.

Further, like in Anderson, Eastwood knew that the only purpose of the dismissal order was to facilitate the settlement and not for Hoefer to forgo any unresolved claims.  Indeed, the express language of the Order itself told the parties that if the case was not settled it could be reopened.  And, like in Anderson, had the parties requested an extension [despite there not even being an explicit deadline], presumably, the district court likely would have granted it.

In this regard, the timing of the parties' request for the 60-Day order is instructive, as it demonstrates that their request was motivated by the impending trial date.  Indeed, trial was scheduled for May 6, 2013 (JA-6 [Min. Entry, Jan. 29, 2013]) and the parties requested a conditional dismissal on April 22, 2013 for purposes of consummating settlement without trial looming.  Had trial not been imminent, there would have been no reason to request dismissal until the settlement was much further along, and, potentially, Eastwood's disavowal thereof known.

In addition, defendants-appellees conduct tips the balance toward reopening. Indeed, consummation of settlement was conditioned upon the Board approving the same at a Board meeting, a factor that necessarily held up the process and, in fact, is what prompted the parties to request sixty days, as opposed to the typical thirty days, in the first instance. Thus, Hoefer was entirely reliant upon the Board's action in presenting the settlement and passing on the same (see JA-506-07). And, of course, Eastwood's reneging and hiring of new counsel also threw things for a loop.

Finally, the interests in finality are not as strong here as they would be when evaluating a Rule 60(b) motion, which is the context in which this balancing test derived. See PRC Harris, 700 F.2d at 897. Indeed, the voluntary dismissal order here was without prejudice, see Fed. R. Civ. P. 41(a)(2) (voluntary dismissals by court order requested by plaintiff are without prejudice unless stated otherwise therein)[5] and, by its own terms [i.e. reserving a right to reinstate], not final.

The district court below held against Hoefer the fact that he knew of Eastwood's reluctance to settle as early as June 23, 2013, but still did not officially request reinstatement until September 18, 2013 (SA-3-4). But this single fact, in light of the totality of circumstances, does not make Hoefer's delay unreasonable. Thus, the court's reliance thereon was error.

---

[5] See Footnote 3, above.

34

Moreover, in finding Hoefer's request unreasonable, the district court, quoting Muze, noted "'[t]he usual form of order specifies that reinstatement must be sought within the same interval established as the time period for finalizing the settlement' – here, that would be sixty days" (SA-3-4 [quoting Muze, 356 F.3d at 494]).  But this statement in Muze was merely explanatory and for purposes of background; it was not at all relevant to the court's reasonableness analysis.

Indeed, this Court also stated in Muze that the Order must be interpreted in light of its *actual* language and not by "inserting a new provision." See Id.  Thus, it explained: "By omitting the usual language specifying that the reinstatement must be made within the time period for settlement [district court] Judge Swain led the parties reasonably to believe that she was setting a time period only for settlement, and that if settlement could not be finalized within that period, reinstatement could be requested thereafter." Id. at 494-95.

The same analysis applies here, and, thus, the district court below erred in holding against Hoefer that fact that the form order typically requires reinstatement to be made within the same time period as that set for consummating the settlement. Indeed, this is the same error this Court found to be fatal in Muze.

Thus, to the extent a reasonableness analysis is required, this Court should find that the district court abused its discretion in failing to find that Hoefer requested

reinstatement within a reasonable time after expiration of the sixty day period for finalizing the settlement.

## POINT II

**THE DISTRICT COURT ERRED IN GRANTING EASTWOOD PARTIAL SUMMARY JUDGMENT DISMISSING HOEFER'S FALSE ARREST CLAIM BECAUSE A REASONABLE JURY COULD FIND THAT EASTWOOD WAS PERSONALLY INVOLVED IN HOEFER'S ARREST AND THAT THE SAME LACKED PROBABLE CAUSE.**

The record in this case contains ample evidence from which a reasonable jury could find for Hoefer on his false arrest claim against Eastwood. Thus, the district court erred in granting partial summary judgment to Eastwood dismissing this claim.

Hoefer brought his false arrest claim against Eastwood under 42 U.S.C. § 1983. To state claim under § 1983, a plaintiff must establish (1) the violation of a right secured by the Constitution or federal law, and (2) that violation was by a person acting under color of state law. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). A § 1983 false arrest claim "derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) (citations omitted). Such claims are assessed under the law of the state where the arrest occurred. Id. at 152.

"To state a claim for false arrest under New York Law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quotations & citations omitted).  In addition to establishing these elements, Hoefer must also establish that Eastwood was personally involved in his arrest. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotations & citations omitted)).  "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly, 439 F.3d at 152 (citations omitted).

The district court below concluded that Hoefer failed to adduce sufficient evidence of Eastwood's personal involvement and that, in any event, the record demonstrates that the arresting officers had probable cause to arrest Hoefer for criminal trespass (SA-17-220).  As explained, below, these holdings are erroneous.

### A. **A reasonable jury could find that Eastwood was personally involved in Hoefer's arrest because the record contains sufficient evidence demonstrating that Eastwood procured the arrest.**

Personal involvement for purposes of § 1983 liability may be demonstrated by, *inter alia*, the defendants' direct participation in the alleged deprivation. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

37

Moreover, under New York law, to hold a civilian liable for false arrest, a plaintiff must demonstrate that the defendant "affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious, and undue zeal to the point where the officer is not acting of his own volition." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998) (quotations & citations omitted).

In finding the record lacked sufficient evidence to demonstrate Eastwood's personal involvement, the district court credited Eastwood's Affidavit submitted in support of his motion for partial summary judgment, in which he avers "(1) he did not contact the police about Plaintiff; (2) no one asked him whether the police should be contacted about Plaintiff; (3) he did not speak to the police about Plaintiff; and (4) he did not instruct anyone to have Plaintiff arrested" (SA-13 [citing JA-369 at ¶¶ 28-29, 31, 32].   The district court also cited Eastwood's deposition testimony disclaiming involvement and Geiger's deposition testimony that he did not hear Eastwood or any other Board member asking the police to arrest Hoefer (Id.).

But in crediting this evidence, the district court ignored entirely the narratives of police officer Mercado, which are part of the police incident report and which directly implicate Eastwood in procuring Hoefer's arrest (JA-358; JA-363). According to Mercado, once Hoefer was outside the school building with the police:

> PO Mercado then told him [Hoefer,] "talk to this officer
> (Festa) and give him your information, I have to find out

38

> what Dr. Eastwood wants to do."  Mercado walked into the building and told Ken Haverlan to ask Eastwood what he wants done.  Haverlan went into the auditorium and then came out and stated that Eastwood wants him arrested.  PO Mercado then told Francis Hoefer that Dr. Eastwood wants him arrested.

(JA-363).  Another of Mercado's narratives reiterates this fact:  "Head of Security Ken Haverlan stated that Dr. Ken Eastwood wanted subject to be arrested" (JA-358). These accounts clearly demonstrate that Eastwood procured Hoefer's arrest.

To the extent the district court justified its disregard of Mercado's statement with its broad conclusion that "[t]here is no *admissible* evidence in the record that Eastwood was involved in Plaintiff's arrest in any way" (SA-17 [emphasis added]), that conclusion is erroneous because Mercado's Narrative *is* admissible to prove Eastwood's involvement.  First, as a police record, Mercado's statement itself is admissible under the business record exception. See Fed. R. Evid. 803(6).

Clearly Eastwood's statement that he wanted Hoefer arrested is non-hearsay because a party admission used against the party-declarant. See Fed. R. Evid. 801(d)(2)(A).  Finally, Haverlan's reporting of Eastwood's statement to Eastwood is non-hearsay because Eastwood authorized Haverlan to report the statement to Mercado and the statement is being offered against Eastwood. See Fed. R. Evid. 801(d)(2)(C).  Eastwood's authorization of Haverlan is reasonably inferred from Mercado's own observation that he directed Haverlan to ask Eastwood what

Eastwood wanted to do and, shortly thereafter, Haverlan reported what Eastwood told him.

In this sense, Haverlan was also Eastwood's agent in communicating his desire to the police and, thus, his statement also falls under Rule 801(d)(2)(D). Cf. United States v. Da Silva, 725 F.2d 828, 831-32 (2d Cir. 1983) (holding that a translator's testimony of what the party-declarant said was non-hearsay under Fed. R. Evid. 801(2)(d)(C) and (D)). Like in Da Silva, Haverlan was like Eastwood's translator – he was the conduit through which Eastwood spoke to the police. And the fact that Haverlan was an employee (and agent) of the School District of which Eastwood was Superintendent (i.e., Chief Executive Officer), only further supports the existence of an agency relationship between Eastwood and Haverlan.

Finally, Haverlan's statement also falls within the present sense impression hearsay exception as it relates perception of his conversation with Eastwood immediately after it occurred. See Fed. R. Evid. 803(1). Since there is an exemption or exception for each level of hearsay in the Mercado's narrative, Eastwood's ultimate statement is admissible. See Fed. R. Evid. 805.

Moreover, Mercado's account corroborates, and is corroborated by, Hoefer's deposition testimony, in which he swore that the officers told him that Eastwood asked them to arrest him (JA-162; JA-173). And, the other officers' accounts are not inconsistent with Mercado's. For instance, Officer Festa's narrative states that

the officers were advised that Hoefer "was no longer welcome on the premises as per Dr. Ken Eastwood (head of Middletown Schools)" (JA-354). And while Festa's account simply states that "Officer Mercado spoke with Ken Haverlan who stated he wanted Hoefer arrested for trespassing," (JA-355), this does not foreclose the fact that Haverlan was directed by Eastwood to request this, as Mercado's own account confirms.

Likewise, Officer Weymer's account, that "Haverlan advised that *the school* wanted to sign a complaint" (JA-357 [emphasis added]) supports Mercado's position that Eastwood, who for all intents and purposes is "the school," directed Haverlan to procure the arrest.

Finally, Geiger's denial of ever hearing Eastwood say that he wanted Hoefer arrested does not mean it did not happen; it just means Geiger did not hear it. Likewise, Eastwood's denials -- that he never contacted the police, that no one ever asked him about contacting the police, that he did not speak to the police and that he did not instruct any one "to have plaintiff arrested" – do not foreclose his personal involvement. Indeed, when the words are parsed carefully, none of these denials is inconsistent with the fact that he told Haverlan, in response to the latter's request as prompted by the police, that he "wanted" Hoefer arrested. And his communication of this desire to Haverlan (which communication he did not deny), with knowledge

and intent that his desire would be relayed to the police is enough to create an issue of fact as to his personal involvement to survive summary judgment.

In any event, on a motion for summary judgment, the district court was not permitted to credit Eastwood's and Geiger's self-serving denials, especially in light of Hoefer's conflicting testimony as corroborated by the contemporaneously-made police reports. See Reeves, 530 U.S. at 151 (in deciding a motion for summary judgment, the court must view the record in the light most favorably to the non-moving party, "must disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.").

Here, Eastwood and Geiger are interested witnesses whose averments are directly contradicted by the non-moving party and by the documentary evidence. Thus, the district court erred in resolving these fact and credibility issues; there is sufficient evidence in the record from which a reasonable jury could find that Eastwood was personally involved by explicitly requesting and procuring Hoefer's arrest. The issue should go to a jury.

**B. A reasonable jury could find that there was no probable cause for Hoefer's arrest because the record contains ample evidence demonstrating that the arresting officers lacked sufficient facts to reasonably conclude that Hoefer knowingly defied a lawful order to leave the premises.**

As already noted, probable cause is an absolute defense to a false arrest claim. "An officer has probable cause to arrest when he or she has knowledge or reasonable trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152 (quotations & citations omitted). Moreover, the existence of lack of probable cause is generally a factual question for the jury, except that the court may decide the issue as a matter of law where the facts known to the arresting police officers at the time of arrest are not in dispute. See Wilder v. Village of Amityville, 288 F.Supp.2d 341, 344 (E.D.N.Y.2003).

In this case, Hoefer was arrested for the offense of criminal trespass. "A person is guilty of criminal trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal L. § 140.05. "Generally, a person will be deemed to 'enter or remain unlawfully' on property when he or she does so without license or privilege." People v. Leonard, 62 N.Y.2d 404, 408 (1984) (citing N.Y. Penal L. § 140.00(5)). Moreover, as the Court of Appeals explained in Leonard:

> When the property is open to the public at the time of the
> alleged trespass, however, the accused is presumed to have

a license and privilege to be present. In such a case, the
People have the burden of proving [(1)] that a lawful order
excluding the defendant from the premises issued, [(2)]
that the order was communicated to the defendant by a
person with authority to make the order, and [(3)] that the
defendant defied that order.

Id. (citations omitted). The Leonard Court expounded further:

[W]hen the public enjoys broad license to utilize certain
properly, State trespass laws may not be enforced solely to
exclude persons from exercising First Amendment or
other protected activity in a manner consistent with the use
of the property. *Therefore, a decision to exclude that is
predicated on or impermissibly inhibits a constitutionally
or a statutorily protected activity will not be lawful.*

To satisfy its burden of prove with respect to the element
of the crime that "a lawful order not to enter the property"
issued, *the People must demonstrate that the particular
order of exclusion had a legitimate basis and that,
considering the nature and use of the subject property, its
enforcement did not unlawfully inhibit or circumscribe the
defendant from engaging in constitutionally or statutorily
protected conduct.* When . . . the subject property is
publically owned and maintained, the People may not
satisfy their burden of proof on this issue by relying on a
presumption that the public official authorized to maintain
order on campus discharged his or her responsibility, in
the particular instance, in a lawful manner.

Id. at 410-11 (citations omitted) (emphases added).

    Thus, in this case, Eastwood, asserting the affirmative defense of probable

cause, has the burden of establishing that the arresting officers had reliable

information from which a reasonable person could conclude that Hoefer knowingly

defied a lawful order to vacate the school building. See Curry v. Syracuse, 316 F.3d

324, 335 (2d Cir.2003) (noting probable cause is an affirmative defense to be pled and proved by defendant). But the record lacks sufficient evidence to carry Eastwood's burden as a matter of law and, at the very least, there remains a question of fact, thus precluding summary judgment.

The Court of Appeals' explication of the law of trespass in Leonard is directly on point. Indeed, none of the evidence in the record demonstrates, as a matter of law, that Hoefer was issued a lawful order to vacate. Geiger denies ever giving such an order (JA-311). And, although Hoefer admits Haverlan ordered him to leave, he explained that Haverlan never provided a justification, stating only, in conclusory fashion, that he would be arrested for trespassing if he did not leave (JA-153-55). Such circular reasoning does not constitute a lawful order.

But more importantly, the police officers' narratives demonstrate the lack of a lawful order and, thus, the lack of their reasonable belief that one issued, such that they lacked probable cause to believe that Hoefer was committing the crime of trespassing. To be sure, all of the officers stated that Haverlan and the school Board told Hoefer to leave because they did not want him there. But merely not wanting someone on public premises is not tantamount to a lawful order. Indeed, the evidence demonstrates that the reason Hoefer was unwanted is because the Board wanted to silence him, and this is precisely the type of motive the Court of Appeals held in Leonard is does not constitute a lawful order. See Id., 62 N.Y.2d at 410-411.

45

Moreover, as <u>Leonard</u> teaches, that the order may have come from Geiger, or Eastwood, or the Board generally or Haverlan, all whom presumably had responsibility for maintaining order at the meeting, does not, by itself, establish a lawful order. <u>See</u> <u>Id.</u> at 411.  In addition, the record evidence, when viewed in the light most favorably to Hoefer, as it must, demonstrates that Hoefer did nothing to warrant removal.  He was not disruptive – he spoke for merely forty-two seconds, and his speech consisted only of his introduction and answering Geiger's questions about where he was from.  Otherwise, he was cut off and silenced before he could speak further.  Indeed, the record demonstrates that it was the Board's own internal strife and quarrelling that disrupted the meeting, not anything Hoefer did.

Even if Hoefer's presence and desire to speak could be said to have ignited the Board's chaos, this was not Hoefer's intent or doing.  He was merely there to speak as a citizen on a matter of public concern, as he had a right under board policy to do, and his request for a legitimate basis for his removal before leaving was justified and cannot support a finding that he was disruptive.

It is also telling that the police reports lack any facts suggesting that Hoefer was being disruptive.  To be sure, Officer Gass describes the incident call as "dispatched to the auditorium of the Middletown high school for a report of disorderly subject interrupting a Middletown school meeting" (JA-356).  But, other than this conclusory description, his narrative contains no facts supporting the

conclusion that Hoefer was acting or being disruptive. That Hoefer may not have wanted to cooperate by leaving a public place, where he was entitled by law to be, does not mean that he was disruptive – it simply means that he wanted to be apprised of a sufficient justification for his ousting, as the law requires any such justification be reasonable. Indeed, as it turns out, there was no sufficient justification.

In addition, the fact that Officer Festa's report states that he "attempted to explain to Hoefer that officers were advised he was being disruptive in the meeting and that is the reason he was asked to leave" is of no moment because, in his very next breath, Festa admits that he "did not speak to Middletown High School Board of Education members of the Middletown High School Security Officers at any time" (JA-359). Thus, he had no personal knowledge and no facts to support this contention. Moreover, the remainder of his report contains no facts suggesting that Hoefer's speech or conduct was disruptive.

Also telling is Officer Mercado's report, which recounts that Hoefer was "acting like a gentleman with us" (JA-363), which further demonstrates he was not being disruptive. Indeed, had the police sufficient facts of Hoefer's disruption, it is curious why he was not also arrested for, or charged with, disorderly conduct. Certainly, if Hoefer was being disruptive to the point that his removal from public premises was warranted, these facts would also support a disorderly conduct arrest or charge. Moreover, when Zelmer first reported the incident to the police, he did

not state that Hoefer was being disruptive, but only that Haverlan had asked him to call regarding a "trespassing" situation (Exhibit H).

Thus, the district court's conclusion that the police officers had probable cause based on information relayed to them by Haverlan – namely that Hoefer was asked to leave and refused – is belied by the record and, thus, erroneous. Moreover, the district court's holding that the police had probable cause based upon their own observations is erroneous. In this regard, the district court concluded: "Officer Mercado, as observed by Officers Festa, Gass and Weymer, personally ordered Plaintiff to leave the auditorium several times and Plaintiff refused to do so. Officers Mercado and Festa further observed Plaintiff continuing to object to his removal while he was being escorted out of the auditorium, and again when [he] was standing outside the school" (SA-19).

But this conclusion merely begs the question – what justified Mercado's order to Hoefer to leave. Again, this was public property, open to the public for the purpose of discussing public issues, and Hoefer was there to partake in such discussion. An order excluding him from the property, whether issued by the owners/operators thereof or the police, must have a sufficient justification and cannot simply be predicated upon the desire a desire to silence protected speech or because the person sought to be excluded is merely not wanted. See Leonard, 62 N.Y.2d at 410-11.

48

The record demonstrates no basis underlying the Mercado's order to Hoefer to leave the premises other than that asserted by the Board and Eastwood – namely to silence Hoefer's speech.  Thus, the fact that his order came from a police officer does not make it any more "lawful" for purposes of establishing criminal trespass from public property.  Accord Hershey v. Goldstein, 938 F.Supp.2d 491, 516 (S.D.N.Y. 2013) (denying motion to dismiss because complaint amply pleaded that police officers' orders to plaintiff were not lawful).

Moreover, the fact that Hoefer "continued to object" as he was actually obeying the order is entirely irrelevant.  The fact that Hoefer may have been displeased with the situation and voiced such displeasure cannot support a trespass charge.

Finally, to the extent the offense of criminal trespass has a *mens rea* element of knowledge – *i.e.*, defendant knowingly remain unlawfully on premises – the fact that Hoefer believed he had every right to remain on the school premises undermines this element.  See Id. at 517 and n.8 ("Hershey disputes that he knowingly remained in a place where he could not lawfully be.  [His Complaint] alleges that [he] advised the officers that he had a First Amendment right to hand out his booklets on the sidewalk . . . .  Hershey's state of mind presents a factual issue that cannot be resolved in defendants' favor at this stage.").

And the police were aware of facts demonstrating Hoefer's state of mind, thus creating a fact issue as to whether it was reasonable for them to believe he possessed the requisite knowledge of that his remaining on the premises was unlawful such that they had probable cause to arrest him for the offense of criminal trespass. Indeed, Mercado's report notes that Hoefer claimed "I can't believe this is happening, I have the right to stay" (JA-363). Likewise, Festa's report notes: "He stated that he was glad to see the media was there to notice his 1st Amendment rights being violated" and that, when inside the patrol vehicle, he "began talking about this Constitutional Rights being violated" (JA-359).

Thus, like in Hershey, the police had notice of his Hoefer's reasonable belief as to his right stay, which creates as a fact issue as to whether they had probable cause to believe he was knowingly violating a lawful order to leave a place he truly believed he permitted to remain.

In the end, the police reports demonstrate simply that the police knew Hoefer was told to leave but did not. But this fact, especially in the absence of any facts demonstrating Hoefer was being disruptive, or demonstrating any other just cause for his exclusion from the premises, cannot reasonably be construed as establishing a lawful order. Thus, the record presents an issue of fact as to probable cause foreclosing the possibility of summary judgment.

# CONCLUSION

The district court plainly had jurisdiction to reopen this matter and, to the extent it held otherwise, its holding was erroneous and must be reversed. To the extent the district court implicitly found it had jurisdiction and, nevertheless, dismissed the case, it abused its discretion and must be reversed.

The district court also erred in holding that a reasonable a jury could not find from this record that Eastwood was personally involved in Hoefer's arrest or that the police lacked probable cause. In fact, the record contains sufficient admissible evidence demonstrating that Eastwood procured the arrest and that the police lacked sufficient facts to reasonably conclude that Hoefer knowingly defied a lawful order to leave.

Accordingly, the district court's Orders dismissing and closing the case and granting partial summary judgment to Eastwood on Hoefer's false arrest claim should be reversed and vacated. And the matter should be remanded for trial on Hoefer's remaining meritorious claims.

Dated:      Goshen, New York
            September 26, 2014                Respectfully submitted,

                                             SUSSMAN AND WATKINS
                                             *Attorneys for Plaintiff-Appellant*

                                             By: _____
                                                  Michael H. Sussman, Esq.
                                                  SUSSMAN AND WATKINS
                                                  P.O. Box 1005
                                                  1 Railroad Avenue, Ste. 3
                                                  Goshen, New York 10924
                                                  (845) 294-3991 [Tel.]
                                                  (845) 294-1623 [Fax]
                                                  sussman1@frontiernet.net

TO:    John McKay, III, Esq.
       BOND, SHOENECK & KING, PLLC
       *Attorneys for Defendants-Appellees*
       1010 Franklin Avenue, Suite 200
       Garden City, New York 11530
       (516) 267-6312 [Tel.]
       (516) 267-6301 [Fax]
       jmckay@bsk.com

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,412 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.

Dated:      Goshen, New York
            September 26, 2014

            _____
            MICHAEL H. SUSSMAN

# SPECIAL APPENDIX

## SPECIAL APPENDIX – TABLE OF CONTENTS

Opinion and Order (May 29, 2014)...………………………………………...SA-1-5

Opinion and Order (January 9, 2013)………………………………………….SA-6-21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED:  5/29/2014
```

FRANCIS E. HOEFER,

                              Plaintiff,

    - against -

BOARD OF EDUCATION OF THE ENLARGED
CITY SCHOOL DISTRICT OF MIDDLETOWN,
DR. KENNETH EASTWOOD, WILLIAM
GEIGER, JOHN DOE 1 and JOHN DOE 2,

                              Defendants.

**OPINION AND ORDER**

10 Civ. 3244 (ER)

Ramos, D.J.:

      The Court assumes the parties' familiarity with the underlying facts and procedural

history of this case.  On April 22, 2013, counsel informed the Court that all claims in this matter

had been settled.  Accordingly, on April 23, 2013, the Court entered an order providing that this

action was "discontinued, without costs to either party, subject to reopening should the

settlement not be consummated within sixty (60) days of the date hereof."  Doc. 27.  The sixty-

day order also advised the parties that "if they wish the Court to retain jurisdiction in this matter

for purposes of enforcing any settlement agreement, they must submit the settlement agreement

to the Court within the next 60 days with a request that the agreement be 'so ordered' by the

Court.'"  *Id.*  Sixty days of silence passed.  It was not until September 2013—more than four

months after entry of the sixty-day order—that the Court received its first indication from the

parties that efforts to consummate the settlement might not have been entirely successful.

      Before the Court are letters from Plaintiff and Defendant Dr. Eastwood addressing the

issue of whether the Court has jurisdiction to hear the case.  For the reasons set forth below,

Plaintiff's application to reinstate the case is DENIED and the case is hereby dismissed.

**I. Discussion**

The Court's sixty-day order provided that this action would be discontinued, subject to reopening if the parties did not reach a settlement within sixty days of April 23, 2013.  The order also established a sixty-day deadline for the parties to seek the Court's continued jurisdiction with respect to enforcement of the settlement agreement.  As the parties correctly observe, however, the order technically did not provide a deadline for seeking reinstatement of the action to the calendar.

The parties agree that, under Second Circuit case law, where, as here, "a discontinuance order does not specify a date by which a request to reopen must be filed and a party wishes to restore the matter to the docket, such request must be made 'within a reasonable time' from the issuance of the discontinuance order."  May 5, 2014 Letter from J. Moller ("Def.'s Ltr.") 2 (citing *Niederland v. Chase*, 425 Fed. App'x 10, 13 (2d Cir. 2011) (summary order)); Apr. 28, 2014 Letter from M. Sussman ("Pl.'s Ltr.") 3 (citing *Muze, Inc. v. Digital on Demand, Inc.*, 356 F.3d 492, 495 (2d Cir. 2004)).  Indeed, "the lack of a deadline for a reinstatement request does not mean that either party ha[s] an unlimited time for seeking reinstatement," and thus, "[t]he omission of a time limit for a permitted or required task normally means that the task is to be performed within a reasonable time."  *Muze*, 356 F.3d at 495.

Plaintiff requested that this matter be restored to the Court's calendar by letter dated September 18, 2013, almost three months after the expiration of the sixty-day order.  Doc. 28.  In support of his request for reinstatement, Plaintiff solely cites *Muze, Inc. v. Digital on Demand, Inc.*  The order at issue in *Muze* specified that "[s]hould settlement not be finalized by January 31, 2002, this case will be reinstated by application of any party."  356 F.3d at 493.  The Second Circuit concluded that Muze, the plaintiff, "[s]urely ... acted within a reasonable time" because it sought reinstatement of the action within six days of the expiration of the deadline for finalizing

2

**SA-2**

the settlement. *Id.* at 495. Plaintiff argues that he, too, sought to reinstate this action within a reasonable timeframe because he notified the Court "less than three months after the expiration of the Court's 60-day order, and within three weeks after the settlement with the other two defendants was actually finalized." Pl.'s Ltr. 3. Plaintiff further argues that Defendant Eastwood "implicitly acknowledged" that Plaintiff's request to reinstate the case was made in a reasonably timely manner because he sought to file a second summary judgment motion. *Id.* at 4. Finally, Plaintiff contends that, because Rule 60(b)(1) of the Federal Rules of Civil Procedure allows parties up to a year to move to reopen judgments for excusable neglect, his delay in moving to reinstate the instant case is "eminently reasonable." *Id.*

Defendant Eastwood asserts that Plaintiff's nearly five-month delay in seeking reinstatement of this case was unreasonable, particularly because Plaintiff had awareness of Eastwood's unwillingness to settle as early as June 23, 2013, prior to the expiration of the sixty-day order, and therefore the Court should issue a final closure in this case. Def.'s Ltr. 2-4.

Upon consideration of the letters submitted by the parties, the authorities cited therein, and the exhibits attached thereto, the Court finds that Plaintiff failed to request reinstatement of this action to the calendar within a reasonable time period after the entry of the order discontinuing the case on April 23, 2013. *Niederland*, 425 Fed. App'x at 13 (affirming district court's decision to enter final order of closure after the parties reported a settlement, then five months passed, during which neither party communicated a need to reactivate the case). Contrary to Plaintiff's assertions, the holding in *Muze, Inc. v. Digital on Demand, Inc.* does not compel a different conclusion, as the length of the plaintiff's delay in *Muze*—a mere six days— was vastly shorter than the months-long delay at issue here. 356 F.3d at 494-95. Moreover, in *Muze*, the court observed that "[t]he usual form of order specifies that reinstatement must be

3

sought within the same interval established as the time period for finalizing the settlement"—
here, that would be sixty days. *Id.* at 494. Plaintiff's counsel's own documents reveal that he
knew of Dr. Eastwood's reluctance to settle as early as June 23, 2013, the very deadline set forth
in the sixty-day order, yet he failed to contact the Court until more than two months thereafter.
*See* Def.'s Ltr. Ex. B. (Jun. 23, 2013 Letter from M. Sussman).

Additionally, the Court finds Plaintiff's Rule 60(b)(1) argument unavailing. Rule 60 of
the Federal Rules of Civil Procedure does not suggest that *all* motions made within a year or less
are reasonable. Rather, it provides that motions for relief from a final judgment, brought under
subsection (b), must be made within a *reasonable* time, not to exceed a year. Fed. R. Civ. P.
60(c)(1); *Niederland*, 425 Fed. App'x at 12 (citations omitted). Courts assess reasonableness
based upon the particular explanations advanced for the delay balanced against the interest in
finality—not whether fewer than 365 days have elapsed. *Id.* (denying the plaintiff's motion to
reopen, filed almost two months after the case closed, and noting that "Rule 60(b)(1) motions to
reopen based on district court mistakes are generally deemed untimely if made after the [30-day]
deadline for filing a notice of appeal.").

Finally, to the extent that Plaintiff argues that the sixty-day order should be viewed as a
dismissal without prejudice pursuant to Rule 41(a)(2) (Pl.'s Ltr. 3), "the Second Circuit has not
addressed whether dismissal orders pursuant to Rule 41(a)(2) must explicitly state that failure to
make an application to restore the action to the court's docket within the prescribed time period
will result in a dismissal with prejudice." *Blue Ridge Investments, LLC v. Republic of
Argentina*, 902 F. Supp. 2d 367, 384 (S.D.N.Y. 2012), *aff'd sub nom.*, *Blue Ridge Investments,
L.L.C. v. Republic of Argentina*, 735 F.3d 72 (2d Cir. 2013). The Court finds persuasive the
reasoning that the "common understanding" of sixty-day orders is that they result in "dismiss[al]

with prejudice regardless of whether the words 'with prejudice' appear in the order," because "treatment of such a dismissal as being without prejudice would produce the unacceptable and doubtless unintended result that the dismissal would remain without prejudice *even if the parties proceeded to consummate the settlement as expected.*" *Strategic Research Inst., Inc. v. Fabozzi,* 187 F.R.D. 507, 509 (S.D.N.Y. 1999) (emphasis in original).

Accordingly, Plaintiff's request to reinstate the case is DENIED and the action is hereby DISMISSED.

## II. Conclusion

For the reasons set forth above, the Clerk of the Court is respectfully directed to close the case.

It is SO ORDERED.

Dated:    May 28, 2014
          New York, New York

                                             Edgardo Ramos, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCIS E HOEFER,

                         Plaintiff,

    - against -

BOARD OF EDUCATION OF THE ENLARGED
CITY SCHOOL DISTRICT OF MIDDLETOWN,
DR. KENNETH EASTWOOD, WILLIAM
GEIGER, JOHN DOE 1 and JOHN DOE 2,

                         Defendants.

---

**OPINION AND ORDER**

10 Civ. 3244 (ER)

Appearances:

Michael Howard Sussman
Sussman & Watkins
Goshen, New York
*Attorney for Plaintiff*

Matthew John Mehnert
Miranda Sambursky Slone Sklarin Vervenioits, LLP
Mineola, New York
*Attorney for the School District Defendants*

Ramos, D.J.:

      Plaintiff, Francis E Hoefer, commenced this action pursuant to 42 U.S.C. § 1983 against

the Board of Education of the Enlarged City School District of Middletown (the "Middletown

Board" or the "Board"), Dr. Kenneth Eastwood ("Eastwood"), William Geiger ("Geiger"), John

Doe 1 and John Doe 2 on April 16, 2010, alleging violations of the First and Fourth

Amendments.  Doc. 1 ("Compl.").  Plaintiff claims that Eastwood, Geiger and the Middletown

Board (the "School District Defendants" or "Defendants") violated the First Amendment by

denying Plaintiff the right to speak during the public participation portion of a public school

board meeting and by excluding Plaintiff from the meeting, Compl. ¶¶ 40, 41, that Eastwood

violated the Fourth Amendment by causing Plaintiff's detention and arrest without probable cause (the "false arrest claim"), *id.* ¶ 42, and that John Doe 1 and John Doe 2 violated the Fourth Amendment by arresting and detaining Plaintiff without probable cause. *Id.* ¶ 43.

Plaintiff alleges that Eastwood caused Plaintiff's detention and arrest without probable cause by directing security for the Enlarged City School District of Middletown to contact the Middletown Police Department. Compl. ¶¶ 29-30, 42. In opposing Defendants' Motion for Partial Summary Judgment, Plaintiff further alleges that Eastwood "directed," "initiated," and "sponsor[ed]" Plaintiff's arrest, Pl.'s Mem. Law Opp. Defs.' Mot. Partial Summ. J. ("Pl.'s Mem.") 3, 4, 13, 15, that he wanted Plaintiff arrested, *id.* at 5-7, and that he asked that Plaintiff be arrested. *Id.* at 15.

Before this Court is the School District Defendants' Motion for Partial Summary Judgment on Plaintiff's false arrest claim against Eastwood.[1] Doc. 11. Plaintiff's First Amendment claims are not the subject of the instant motion.[2] For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is GRANTED.

---

[1] Although Plaintiff has also asserted a false arrest claim against John Doe 1 and John Doe 2, who are identified only as police officers employed by the City of Middletown, Compl. ¶ 5, the instant motion only relates to the false arrest claim against Eastwood. Counsel for the School District Defendants does not represent the John Doe defendants who have never appeared in this action. *See* Doc. 4; *see also infra* Section IV.

[2] Since the School District Defendants have not asked the court to grant summary judgment with respect to Plaintiff's First Amendment Claims, the Court has disregarded the portions of Plaintiff's motion papers that solely relate to such claims. *E.g.*, Pl.'s Mem. 8-9; Pl.'s Reply Defs.' Stmt. Material Facts Pursuant to Local R. 56.1 ("Pl.'s 56.1 Stmt.") ¶¶ 3-8, 13-25 at 10-16, Doc. 16; *see also infra* note 3. Additionally, the Court has disregarded Plaintiff's arguments regarding a malicious prosecution claim against Eastwood, Pl.'s Mem. 10-13, because there is no such claim in the complaint nor could the factual allegations in the complaint even be construed to support such a claim. *See, e.g.*, *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (explaining that it is inappropriate to consider claims not pleaded in complaint that are raised for the first time in opposition to summary judgment) (citations omitted), *aff'd*, 445 F. App'x 389 (2d Cir. 2011); *see also Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) (stating that the complaint may not be amended simply by raising new facts in opposition papers).

2

SA-7

## I. Factual Background

The following facts, which are based on the Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defendants' 56.1 Statement"), Doc. 14, and the exhibits attached to the Declaration of Matthew J. Mehnert in Support of Defendants' Motion for Partial Summary Judgment ("Mehnert Decl."), Doc. 13, are undisputed unless otherwise noted.[3]

Plaintiff is a resident of the City of Oswego and a member of the Board of Education of the Oswego City School District (the "Oswego School Board"). Compl. ¶ 1; Defs.' 56.1 Stmt. ¶ 1. Eastwood has been the Superintendent of Schools for the Enlarged City School District of

---

[3] Plaintiff, as the party opposing summary judgment, was required to submit a response to Defendants' 56.1 Statement specifically responding to the assertion of each purported undisputed fact by the movant, and, if controverting any such fact, to support his position by citing to admissible evidence in the record. *See* Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). My Individual Practices further require the party opposing a motion for summary judgment to reproduce each entry in the moving party's Rule 56.1 Statement and set out his response directly beneath it. *See* Individual Practices Rule 2(C)(i). These rules—simple to understand and apply—are designed to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and admissible to that determination. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").

Unfortunately, Plaintiff's counsel in this case has once again failed to comply with these straightforward requirements. *See, e.g., Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012) (collecting cases). Plaintiff's Reply to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 is deficient in several significant respects; however, the Court will not expend limited judicial resources scrutinizing each response and explaining why it is improper under the Local Rules of this District and the Federal Rules of Civil Procedure. It is sufficient to say that the responses wherein Plaintiff purports to deny one of Defendants' statements of material fact are improper in that they either do not actually controvert the facts set forth in Defendants' 56.1 Statement, or they purport to deny facts properly set forth by Defendants' 56.1 Statement without any citations to admissible evidence or with a citation to evidence that does not support Plaintiff's purported denial. Accordingly, all of the facts contained in Defendants' 56.1 Statement that are supported by citations to admissible evidence in the record are deemed admitted for purposes of this motion. Local R. 56.1(c); *see also, e.g., Holtz*, 258 F.3d at 74 (explaining that where, as here, there are no citations to admissible evidence, or the cited materials do not support the purported undisputed facts in a party's 56.1 statement, those assertions must be disregarded); *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (same).

With respect to the additional statements of material fact set forth in Plaintiff's Counter-Statement of Facts, which immediately follows Plaintiff's responses to Defendants' 56.1 Statement, Pl.'s 56.1 Stmt. 10-16, only *two* of the twenty-five additional statements are even arguably material to Plaintiff's false arrest claim against Eastwood. Pl.'s 56.1 Stmt. ¶¶ 11-12, at 13. Therefore, the Court has not considered the balance of Plaintiff's Counter-Statement.

Middletown (the "District") since 2004.  Defs.' 56.1 Stmt. ¶ 3.  From approximately 2001 until

2004, Eastwood was the Superintendent of Schools for the Oswego City School District.  *Id.* ¶ 4.

While serving in that role, Eastwood first met Plaintiff, who was then a member of the Oswego

School Board.  Aff. of Dr. Kenneth Eastwood Supp. Defs.' Partial Mot. Summ. J. ("Eastwood

Aff.") ¶ 4, Doc. 12.  Geiger has been a member of the Middletown Board since 2004 and served

as President of the Board from July 2, 2009 until July 2011.  Defs.' 56.1 Stmt. ¶ 5.

    A regular meeting of the Middletown Board was held at 7:30 pm on March 4, 2010 in the

auditorium of Middletown High School.  Defs.' 56.1 Stmt. ¶ 6.  As Superintendent of Schools

for the District, Eastwood was required to attend the meeting.  Eastwood Aff. ¶ 3.  Geiger, as

president of the Board, presided over the meeting.  Defs.' 56.1 Stmt. ¶ 8.  Plaintiff arrived at the

high school shortly before the meeting began.  *Id.* ¶ 7.  Plaintiff had been invited to the meeting

by Dr. Nicholas Mauro ("Mauro"), a member of the Middletown Board,[4] for the purpose of

informing the Middletown community about his prior experiences with Eastwood.[5]  Mehnert

Decl. Ex. C ("Hoefer Dep. Tr.") 48:7-17, 53:3-17, 57:18-58:9; *see also* Mehnert Decl. Ex. I, at 2,

6-7, 8.

    Approximately thirty minutes after the meeting began, Geiger announced the public

comment portion of the meeting, which he described as reserved for "community members who

live here and choose to address the Board of Education."  *Id.* ¶¶ 9-10; Mehnert Decl. Ex. F.

---

[4] Eastwood did not know that Plaintiff had been invited to the meeting or that he was planning to attend the meeting
prior to Plaintiff's appearance on March 4, 2010.  *See* Pl.'s 56.1 Stmt. Ex. 1 ("Eastwood Dep. Tr.") 181:7-17; *see
also* Hoefer Dep. Tr. 55:3-56:10.  The Court also notes that Plaintiff did not tell any of the police officers that he had
been invited to the meeting until after he was arrested, during an interview that was conducted by Lieutenant
Graziano at the police station.  Mehnert Decl. Ex. I, at 2, 6-7.

[5] Plaintiff was removed from the Oswego School Board in June of 2004, after a hearing, because of allegations of
misconduct, including various incidents relating to Plaintiff's treatment of and statements about Eastwood during his
tenure as Superintendent of Schools for Oswego.  *See* Hoefer Dep. Tr. 30:12-20-35:22, 41:19-44:17.  Plaintiff was
re-elected to the Oswego School Board in 2008.  *Id.* at 12:22-25.

After Geiger's announcement, Plaintiff approached the microphone near the front of the auditorium, identified himself by name and stated that he was a member of the Oswego School Board. Defs.' 56.1 Stmt. ¶¶ 11, 13. Geiger inquired as to whether Plaintiff lived or worked in Middletown, and Plaintiff responded by stating that he was a "member of New York State," and then reiterated that he was from Oswego. Defs.' 56.1 Stmt. ¶¶ 17, 18. Geiger stated again that the public comment portion of the meeting was reserved for community members. *Id.* ¶ 19.

At that time, Mauro interjected and a brief, heated exchange between Mauro and Geiger (which could be heard by everyone at the meeting) ensued. *Id.* ¶ 20; *see also* Mehnert Decl. Ex. F. While Geiger and Mauro were speaking to each other, Plaintiff began to read a prepared, written statement into the microphone. Defs.' 56.1 Stmt. ¶ 21. A few moments later, Geiger turned back to Plaintiff and started to tell him that his time to speak had run, before asking Ken Haverlan, then-Head of Security for the District, to remove Plaintiff from the microphone area. *Id.* ¶ 22; Mehnert Decl. Ex. F. Plaintiff attempted to read his prepared statement into the microphone despite Geiger's request that he stop speaking. *Id.* ¶ 23; *see also* Hoefer Dep. Tr. 106:4-12, 106:24-107:3, 157:17-22. A video recording of the meeting shows that Plaintiff stopped reading his statement only when Mauro resumed speaking loudly into the microphone. Mehnert Decl. Ex. F. At the same time, Geiger made a motion to go out of session, because of the kerfuffle. *Id.*; Defs.' 56.1 Stmt. ¶ 24; Mehnert Decl. Ex. D ("Geiger Dep. Tr.") 26:19-27:4. The motion was approved by a majority of the Board, and a recess was taken at approximately 8:02 pm. Defs.' 56.1 Stmt. ¶ 24. The recess lasted for approximately 26 minutes. *Id.* ¶ 25. At the time the recess was taken, Plaintiff was still standing at the microphone. *Id.* ¶ 26.

At approximately the time the recess began,[6] while Plaintiff was still standing at the microphone, Plaintiff was approached by two members of District security. *Id.* ¶ 27. The security officers asked Plaintiff to leave the premises because he was trespassing on District property. *Id.* ¶¶ 27-28; Hoefer Dep. Tr. 116:11-12, 117:11-12. It is undisputed that District security asked Plaintiff to leave the premises several times, and that Plaintiff refused to do so. Defs.' 56.1 Stmt. ¶ 29; Hoefer Dep. Tr. 116:15-19, 117:1-7, 118:3-6; *see also* Pl.'s Mem. 14.

At some point during the recess, Henry Zelmer, a District security officer who worked at the high school, contacted the Middletown Police Department at the request of Haverlan and reported that there was an individual at the Board meeting who was refusing to leave. Defs.' 56.1 Stmt. ¶ 30; Mehnert Decl. Ex. H. There is no evidence in the record of anyone else contacting the Middletown Police Department neither regarding the events of March 4, 2010.

At approximately 8:20 pm, four Middletown police officers—Esteban Mercado, Joseph Festa, Patrick Gass and Kevin Weymer—arrived at Middletown High School in response to a report of trespassing. Defs.' 56.1 Stmt. ¶ 31; Mehnert Decl. Ex. I, at 1, 4, 5; *see also id.* at 3 (indicating that officers responded to a report of "a disorderly subject interrupting a Middletown School Board meeting"). Upon their arrival, Haverlan advised the officers that Plaintiff had been asked to leave the meeting by both the Board and District security more than once, but that he refused to leave school property. Defs.' 56.1 Stmt. ¶ 32; *see also, e.g.,* Mehnert Decl. Ex. I, at 1, 3, 5, 10; *see also id.* at 6 (reporting that officers were informed that Plaintiff was asked to leave the school by District security because he was being "disruptive").

---

[6] The parties disagree as to whether Plaintiff was approached by District security before or after the recess began, Defs.' 56.1 Stmt. ¶ 27; Pl.'s 56.1 Stmt. ¶ 27, and neither party's version of the events is clearly supported by the evidence in the record. *See* Mehnert Decl. Ex. F; Hoefer Dep. Tr. 113:1-15; *see also id. at* 115:6 (referring to the "hullabaloo" that was taking place at the meeting). However, this dispute is not material to Plaintiff's false arrest claim. The Court also notes that Plaintiff is not visible for the second half of video recording, which cuts off immediately after the Board voted to go out of session. Mehnert Decl. Ex. F.

Officers Mercado and Festa then approached Plaintiff, who was still standing at the microphone, and advised him that he needed to leave the school a number of times, but Plaintiff still refused to leave the auditorium. Defs.' 56.1 Stmt. ¶ 33; Hoefer Dep. Tr. 120:20-121:11; Mehnert Decl. Ex. I, at 1-3, 5, 8, 10. Officers Mercado and Festa reported that Plaintiff ignored Mercado's efforts to explain to Plaintiff that he needed to leave the premises because he was disrupting the meeting and had been asked to leave by District security, and that Plaintiff stated several times that he was not going to leave the premises. *See, e.g.*, Mehnert Decl. Ex. I, at 2, 6. After further discussion, during which Plaintiff was informed that he would be arrested for trespassing if he did not leave the premises, *id.* at 1, 5, 10, Plaintiff agreed to leave the auditorium. Defs.' 56.1 Stmt. ¶ 34. Plaintiff was escorted outside by Officers Festa and Mercado and two members of District security. *Id.* ¶¶ 34-36; *see also, e.g.*, Mehnert Decl. Ex. I, at 5, 6, 8, 10, 12. While being escorted out of the auditorium, Plaintiff stated that he had the right to stay at the meeting. Mehnert Decl. Ex. I, at 10.

Once outside, Plaintiff again asserted that he had a right to be at the school, and then declared to Officers Mercado and Festa that he was not going to leave. Defs.' 56.1 Stmt. ¶ 38; Hoefer Dep. Tr. 122:15-19, Mehnert Decl. Ex. I at 6, 10. Officer Mercado then spoke to Haverlan, again, who stated that he wanted Plaintiff arrested for trespassing. Mehnert Decl. Ex. I, at 2-3. Haverlan also told Officers Gass and Weymer that he wanted to pursue a criminal trespass complaint against Plaintiff. *Id.* at 3, 4, 8; Defs.' 56.1 Stmt. ¶ 52. Although Officer Mercado reported that Haverlan told him that Eastwood wanted Plaintiff to be arrested, it is undisputed that Mercado did not speak to Eastwood. Defs.' 56.1 Stmt. ¶ 53; *see also* Mehnert Decl. Ex. I, at 2.

In fact, none of the police officers spoke with Eastwood on March 4, 2010. *See* Defs.'

56.1 Stmt. ¶¶ 50-52; Mehnert Decl. Ex. I, at 6; Eastwood Aff. ¶¶ 28, 31. In support of the

School District Defendants' Motion for Partial Summary Judgment, Eastwood submitted an

affidavit wherein he avers that on March 4, 2010: (1) he did not contact the police about

Plaintiff; (2) no one asked him whether the police should be contacted about Plaintiff; (3) he did

not speak to the police about Plaintiff; and (4) he did not instruct anyone to have Plaintiff

arrested. Eastwood Aff. ¶¶ 28-29, 31-32; *see also* Eastwood Dep. Tr. 188:6-13 (testifying that

he did not call the police and that he did not know the identity of the person who called the

police); Geiger Dep. Tr. 37:16-38:4, 39:18-40:7 (testifying that he did not hear Eastwood or any

other board member asking District security to remove Plaintiff from the meeting or asking the

police to arrest Plaintiff). It is undisputed that Plaintiff did not see Eastwood speaking with any

police officers or District security officers at any time on March 4, 2010, Hoefer Dep. Tr. 135:5-

10, and Plaintiff has not offered any admissible evidence that contradicts or undermines

Eastwood's clear averments.

On the basis of Haverlan's statements to Officers Mercado, Weymer and Gass, and his

stated intention to press charges, Plaintiff was subsequently arrested. Defs.' 56.1 Stmt. ¶ 42;

Mehnert Decl. Ex. I, at 3, 4. Officers Mercado and Festa then transported Plaintiff to the

Middletown Police Department. *Id.* ¶ 43; Mehnert Decl. Ex. I, at 2, 3, 5, 7, 10. At the police

station, Plaintiff was interviewed by Lieutenant Graziano and placed in a holding cell. Defs.'

56.1 Stmt. ¶ 44. Graziano also spoke to Haverlan. Mehnert Decl. Ex. I, at 10. Approximately

one hour later, Plaintiff was told that he would be released on the condition that he not return to

the Board meeting. Defs.' 56.1 Stmt. ¶ 45. After Plaintiff agreed to this condition, Officers

Mercado and Festa drove Plaintiff to his car, which was parked at Middletown High School. *Id.*

¶¶ 46-47. Officer Mercado reported that while Plaintiff was unlocking his car, he said "I will come back," to which Mercado responded by saying: "You were told not to return, that was the agreement so please get in your vehicle and leave." Mehnert Decl. Ex. I, at 10. Plaintiff then got into his car and drove back to his hotel. *Id.*; Defs.' 56.1 Stmt. ¶ 47. Plaintiff was not charged with a crime as the result of the events of March 4, 2010. Defs.' 56.1 Stmt. ¶ 48.

## II. Legal Standard Governing Motions for Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Osberg v. Foot Locker, Inc.*, --- F. Supp. 2d ----, 2012 WL 6062542, at *4 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009)

(citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts. *Major League Baseball Props., Inc.*, 542 F.3d at 310 (collecting cases); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki*, 278 F.3d 93, 101

(2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322). In that situation, there can be no

"genuine dispute as to any material fact," since a failure of proof on an essential element of the

non-moving party's case "necessarily renders all other facts immaterial." *Celotex Corp.,* 477

U.S. at 322-23.

## III. Plaintiff's False Arrest Claim

### A. Legal Standard

In order to state a claim under Section 1983, a plaintiff must allege that: (1) a right

secured by the Constitution or federal law was violated by defendants, and (2) the alleged

violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v.

Sullivan,* 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the

substantive right giving rise to the action must come from another source." *Singer v. Fulton

Cnty. Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995). Thus, a civil rights action brought under § 1983

will stand only insofar as the plaintiff can prove an actual violation of his rights under the

Constitution or federal law. *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)).

The Second Circuit has explained that a Section "1983 claim for false arrest derives from

[the] Fourth Amendment right to remain free from unreasonable seizures, which includes the

right to remain free from arrest absent probable cause." *Jaegly v. Couch,* 439 F.3d 149, 151 (2d

Cir. 2006) (Sotomayor, J.) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)). In *Jaegly,*

the Circuit stated that, "[i]n analyzing § 1983 claims for unconstitutional false arrest, we have

generally looked to the law of the state in which the arrest occurred." *Id.* at 151-52. "To state a

claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended

to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did

not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino*

*v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation and internal quotation marks omitted).

Here, Plaintiff was arrested for criminal trespass. Under section 140.05 of New York Penal Law, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05 (McKinney 2012). Where a person is on property that is generally open to the public at the time of the alleged violation, a criminal trespass occurs where: (1) there was a "lawful order excluding the [alleged trespasser] from the premises," (2) "the order was communicated to the [alleged trespasser] by a person with authority to make the order," and (3) the alleged trespasser "defied the order." *People v. Leonard*, 465 N.E.2d 831, 834 (N.Y. 1984) (citation omitted); *see also* N.Y. Penal Law § 140.00(5) & prac. cmt. (McKinney 2012).

**B. Discussion**

The instant motion only relates to Plaintiff's false arrest claim against Eastwood. There is no admissible evidence in the record that Eastwood was involved in Plaintiff's arrest in any way. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F. 3d 470, 484 (2d Cir. 2006) (Sotomayor, J.) (citation and internal quotation marks omitted); *see also, e.g.*, *Brandon v. City of New York*, 705 F. Supp. 2d 261, 274-75 (S.D.N.Y. 2010) (noting that a lack of personal involvement is grounds for dismissing a § 1983 claim on the merits). Based upon the available, admissible evidence viewed in the light most favorable to Plaintiff, no reasonable jury could conclude that Eastwood was personally involved in Plaintiff's arrest.[7] This is reason enough to dismiss Plaintiff's false arrest claim against Eastwood.

---

[7] Since Plaintiff has failed to offer any admissible evidence demonstrating that Eastwood violated his constitutional rights, the Court need not consider Eastwood's qualified immunity defense. *Jaegly*, 439 F.3d at 154.

The Court notes, however, that Plaintiff's false arrest claim would also fail against a defendant who *was* personally involved in his arrest, because the arrest was clearly supported by probable cause. "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly*, 439 F.3d at 152 (citing *Weyant*, 101 F.3d at 852). The Second Circuit has explained that "[a]n officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Id.* (quoting *Weyant*, 101 F.3d at 852). The probable cause inquiry is confined to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). Where there is no dispute regarding the facts that were known to the arresting police officers at the time of the arrest, the existence of probable cause can be decided by the Court as a matter of law. *Price v. Meehan*, No. 06 Civ. 5016 (SJF) (WDW), 2009 WL 1546317, at *3 (E.D.N.Y. June 1, 2001) (citing *Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003)).

Here, Defendants have offered admissible evidence showing that two members of District security reported that Plaintiff had been asked to leave the auditorium a number of times because he was disrupting a Middletown Board meeting and that Plaintiff had repeatedly refused to leave the premises. "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (alteration in original) (internal citation and quotation marks omitted). Information from an identified bystander with no apparent motive to falsify is presumed to be

13

SA-18

reliable. *Id.* Thus, Zelmer's initial report and Haverlan's subsequent representations to the police officers, which Plaintiff does not dispute or otherwise challenge, are likely sufficient on their own to establish probable cause for Plaintiff's arrest. *See, e.g., Jaegly,* 439 F.3d at 153.

However, the information from Zelmer and Haverlan was not the sole basis for the arrest, because Officer Mercado, as observed by Officers Festa, Gass and Weymer, personally ordered Plaintiff to leave the auditorium several times and Plaintiff refused to do so. Officers Mercado and Festa further observed Plaintiff continuing to object to his removal while he was being escorted out of the auditorium, and again when was standing outside of the school. Therefore, the officers also had probable cause to arrest Plaintiff on the basis of the behavior they personally observed after arriving at the school. *Haussman v. Fergus,* 894 F. Supp. 142, 148-49 (S.D.N.Y. 1995); *see also Warheit v. City of New York,* 271 F. App'x 123, 125-26 (2d Cir. 2008) (summary order). Plaintiff's conclusory assertion that he complied with the police officers' orders to leave the premises, Pl.'s Mem. 14-15, which is directly contradicted by his own prior sworn testimony and the reports of all four police officers, is insufficient to create a factual dispute concerning Plaintiff's repeated refusal to leave the school after the police officers ordered him to do so numerous times.[8]

The information provided to the officers prior to and upon their arrival at the school, in combination with their personal observations of Plaintiff's conduct, clearly provide ample probable cause for Plaintiff's arrest. *Warheit,* 271 F. App'x at 125 (concluding that "no

---

[8] The Court also notes that Plaintiff's unsupported argument that the officers did not observe any criminal behavior because criminal trespass is defined as a "violation" under New York law, Pl.'s Mem. 15, is completely meritless. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) (rejecting argument that officers lacked probable cause to arrest plaintiff for conduct that was only punishable by fine, and holding that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *see also Sands v. City of New York,* No. 04 Civ. 5275 (BMC) (CLP), 2006 WL 2850613, at *4-5 (E.D.N.Y. Oct. 3, 2006) (dismissing false arrest claim where plaintiff was arrested for littering in violation of city health code).

reasonable jury could conclude that [police officer] lacked probable cause to arrest [plaintiff] for trespassing," where officer received a complaint about plaintiff causing a disturbance from a witness and then personally asked plaintiff to leave the premises several times, which plaintiff refused to do). Thus, even if there was admissible evidence demonstrating that Eastwood was personally involved with Plaintiff's arrest in the manner alleged in the Complaint—which there is not—Plaintiff's false arrest claim would still fail, because there was ample probable cause to validate his arrest. Therefore, the School District Defendants' Motion for Partial Summary Judgment on Plaintiff's false arrest claim against Eastwood is GRANTED.

## IV. John Doe Defendants

Plaintiff has also asserted a Fourth Amendment claim against two John Doe defendants who are identified in the Complaint as police officers employed by the City of Middletown. Compl. ¶ 5. On at least two separate occasions, the School District Defendants have stated that Plaintiff has chosen not to pursue the claim against the John Doe defendants, *see e.g.* Defs.' Mem. 7 n.2, and Plaintiff has never contested Defendants' representations. It is clear from the evidence before the Court that Plaintiff has known the identity of the John Doe defendants since long before the filing of the instant motion, and has never sought to amend his complaint to identify these individuals.[9] Nor has he otherwise indicated at any point during the course of these proceedings that he intends to pursue his claims against the Does.

The Court thus concludes that Plaintiff has abandoned his Fourth Amendment claim against John Doe 1 and John Doe 2. *Southerland v. City of New York*, 680 F.3d 127, 139 n.12 (2d Cir.), *reh'g en banc denied*, 681 F.3d 122 (2d Cir. 2012), *petition for cert. filed*, No. 12-215

---

[9] Further, even if Plaintiff now sought to amend his complaint to identify the John Doe defendants, the Fourth Amendment claim against them, which is the only claim asserted against the John Doe defendants in the Complaint, would be dismissed on the merits because there was probable cause for the arrest for the reasons discussed above.

(Aug. 15, 2012); *see also Brandon*, 705 F. Supp. 2d at 268 (collecting cases where plaintiff's claims were dismissed as abandoned based on failure to address them in opposition to defendant's motion). Therefore, Plaintiff's claims against John Doe 1 and John Doe 2 are DISMISSED.

**V. Conclusion**

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment on Plaintiff's false arrest claim against Eastwood is GRANTED, and Plaintiff's claims against John Doe 1 and John Doe 2 are DISMISSED.

The Clerk of the Court is respectfully directed to terminate this motion, Doc. 11, and to terminate John Doe 1 and John Doe 2 as defendants in this case.

The parties are to appear for a pre-trial conference on January 29, 2013 at 11:00 am.


It is SO ORDERED.


Dated:    January 9, 2013
          White Plains, New York

                                        Edgardo Ramos, U.S.D.J.